IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MANUEL C. SEDILLOS

      Plaintiff,

v.                                              No. 1:10-cv-01063-WJ/WDS

UNITED COLLECTION BUREAU, INC.,

      Defendant.

## DEFENDANT'S MOTION AND MEMORANDUM BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION AND BACKGROUND

This case arises from a telephone call that UCB allegedly made to Plaintiff's father Manuel A. Sedillos ("Plaintiff's Father") regarding a debt that Plaintiff owes to CitiBank. Plaintiff alleges that after the telephone call with Plaintiff's Father was transferred to UCB representative Ruben Vignoli, Mr. Vignoli: 1) mentioned Plaintiff's debt; 2) stated he was calling "from Citibank;" and 3) left a message for Plaintiff to return the call.  *See* Complaint, Doc. No. 1 at ¶¶ 6-24.  Plaintiff contends that this telephone call violated several different laws that regulate the collection of debt.  Specifically, Mr. Sedillos has brought suit in this Court under the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*. ("FDCPA"), the New Mexico Unfair Practices Act, 1978 NMSA Sections 57-12-1 *et seq*. (the "NMUPA"), and New Mexico's common law tortious debt collection doctrine.  On August 17, 2011, this Court granted Defendant's Motion for Partial Dismissal which dismissed Plaintiff's claim for injunctive relief and the vast majority of his claim under the NMUPA.  *See* Doc. No. 69.  As will be explained in detail below, each and every remaining claim brought by Plaintiff fails as a matter of law.

UCB is entitled to summary judgment as to each of Plaintiff's claims under the FDCPA. First, UCB is entitled to a bona fide error defense regarding Plaintiff's claim for an improper disclosure of his debt to a third party under Sections 1692b or 1692c(b) because UCB representative Ruben Vignoli believed that he was speaking with Plaintiff, and not Plaintiff's Father, when he mentioned the debt.   Second, Plaintiff's claim for a violation of Section 1692c(b) for Mr. Vignoli's message for a return call fails because Mr. Vignoli did not convey information regarding Plaintiff's debt that was not covered by the bona fide error defense.   Third, Plaintiff's claim for a violation of Section 1692e based upon Mr. Vignoli's alleged statement that he was calling "from CitiBank" fails because such a "false" statement was immaterial since Citibank had authorized UCB to collect the debt that Plaintiff owed to CitiBank.

Furthermore Plaintiff's remaining claim(s) under the NMUPA fail because Plaintiff has not alleged or proven that he has suffered a loss of any money or property.   Lastly, Plaintiff's claim under the *Larragoite* "tortious debt collection doctrine" fails because this doctrine only provides for a claim against a collection company that intentionally uses improper means to force an individual to pay a debt that he does not owe.   Even if the *Larragoite* doctrine does provide a claim for debtors, Plaintiff's claim still fails because: 1) the only damages at issue are non-economic damages; and 2) the only alleged action that could have upset the sensibilities of an ordinary person, that is Mr. Vignoli's alleged disclosure of the debt, was unintentional.   Since each of Plaintiff's claims fail as a matter of law, the Court should grant judgment in favor of UCB.

## UNDISPUTED FACTS

1.  Plaintiff's full name is Manuel Carbajal Sedillos.  *See* Deposition of Manuel C. Sedillos attached hereto as Exhibit A at 4:7-13.

2.  Plaintiff's father's full name is Manuel Amador Sedillos ("Plaintiff's Father").  *See* Deposition of Manuel A. Sedillos attached hereto as Exhibit B at 4:4-6.

3.  UCB representative Ruben Vignoli did not initiate the telephone call with Plaintiff's Father that is the subject of this case.  Instead, it was a "lady", believed to be UCB representative Patsy Quintana, that initially placed the call to Plaintiff's Father's telephone number.  *See* Complaint, Doc. No. 1 at ¶¶ 15-16; Plaintiff's Father's Statement attached hereto as Exhibit C; Plaintiff's Handwritten Notes attached hereto as Exhibit D; Exhibit B at 22:15-23:21.

4.  The "lady" that called Plaintiff's Father asked for Manuel C. Sedillos.  *See* Exhibit B at 22:15-23:21; Exhibits C & D.

5.  Plaintiff's Father was stuttering in response to the "lady," "probably" mixing Spanish with English.  Plaintiff's Father did not believe that the "lady" understood anything he was saying.  Plaintiff's Father did not tell the "lady" that he was not Manuel C. Sedillos.  *See* Exhibit B at 22:15-24:7; Exhibit C; Exhibit D.

6.  Plaintiff's Father's call was transferred to UCB representative Ruben Vignoli.  *See* Exhibit B at 22:15-24:18; Exhibits C & D.

7.  Mr. Vignoli introduced himself to Plaintiff's Father and began by asking "what he was going to do about his $12,000 debt."  *See* Complaint, Doc. No. 1 at ¶ 17; Exhibit B at 24:8-22; Exhibits C & D.

8.  Plaintiff's Father then told Mr. Vignoli that he was Manuel A. Sedillos.  Mr. Vignoli asked if Plaintiff's Father knew Manuel C. Sedillos.  At that point, Plaintiff's Father told Mr.

Vignoli that Manuel C. Sedillos was his son.  Plaintiff's Father believes that Mr. Vignoli thought that he was speaking to Manuel C. Sedillos, the Plaintiff, up until Plaintiff's Father informed Mr. Vignoli that he was Manuel A. Sedillos.  *See* Exhibit B at 24:19-25:20; Exhibits C & D.

9.   Mr. Vignoli did not know that he was speaking with Plaintiff's Father when he asked him about Plaintiff's debt, but instead believed that he was speaking with Plaintiff.  *See* Complaint, Doc. No. 1 at ¶ 17; Exhibits C & D (These exhibits show that Mr. Vignoli phrased the question as if speaking with Plaintiff); Exhibit B at 24:19-25:20; Compliance-Associate Interview Form completed by Ruben Vignoli (the "Interview Form") attached hereto as Exhibit E.

10. At the time of the alleged call at issue in this case, on or about July 22, 2010, UCB had in place its "CitiBank Collection Manual – United Collection Bureau" (the "Collection Manual"). *See* Affidavit of John Terry attached hereto as Exhibit F; relevant portions of Collection Manual attached hereto as Exhibit G.

11. At the time of the alleged call at issue in this case, on or about July 22, 2010, UCB had in place its "FDCPA Overview."  *See* Exhibit F; relevant portions of FDCPA Overview attached hereto as Exhibit H.

12. CitiBank authorized UCB to collect the debt that Plaintiff owed to CitiBank.  *See* Exhibit F.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## ARGUMENT

**I.      Plaintiff's Claims Under The FDCPA.**

**A.      Plaintiff's Claim Under Sections 1692b And 1692c(b) For An Improper Disclosure Of His Debt Fails Because The Disclosure Is Subject To The Bona Fide Error Defense.**

Section 1692b of the FDCPA provides that a debt collector shall "not state that a consumer owes any debt" when communicating with a third party for purposes of acquiring location information.  15 U.S.C. § 1692b.  Plaintiff claims that UCB violated Section 1692b because Mr. Vignoli asked Plaintiff's Father "what he was going to do about his $12,000 debt." *See* Complaint, Doc. No. 1 at ¶¶ 17, 33.  Even if it is assumed for purposes of this Motion that Mr. Vignoli asked this question to Plaintiff's Father, which UCB denies, the undisputed facts show that UCB is entitled to a bona fide error defense because Mr. Vignoli believed that he was speaking with Plaintiff, and not with Plaintiff's Father, when he made this statement.

15 U.S.C. Section 1692k(c) provides a bona fide error defense for actions under the FDCPA:

> A debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

"[A]n FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006) (citation omitted).  In *Riddle*, the Tenth Circuit explained that the

"unintentional" prong of this test was a subjective analysis, whereas the "bona fide error" and "procedures" prongs were objective prongs to be established by reasonableness. *Id*. at 728-29.

First, Mr. Vignoli's disclosure of the debt amount to Plaintiff's Father was unintentional because Mr. Vignoli believed that he was speaking with Plaintiff, and not Plaintiff's Father, when he asked about Plaintiff's $12,000 debt. *See* UF Nos. 7-9.  The *Riddle* court noted that the law is unsettled regarding the "unintentional" prong, "that is, whether it is the general intent to collect a debt or whether it is the specific intent to violate the FDCPA." *Riddle*, 443 F.3d at 728. In *Riddle*, the court adopted the view that to establish a bona fide error defense, the "debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional." *Id*.[1]  Regardless of whether the intent prong is based upon the underlying act or an intentional violation, Mr. Vignoli's disclosure was unintentional for purposes of this analysis because he factually believed he was speaking with Plaintiff and therefore did not intend the underlying disclosure or the alleged violation of Section 1692b.

Mr. Vignoli did not make the initial call to Plaintiff's Father.  *See* UF No. 3.  Plaintiff's Father explained that a "lady" called and asked for "Manuel C. Sedillos."  *See id*.  Plaintiff's Father testified that he does not believe that this "lady" understood any response he had given to her during the call because he was stuttering, "probably" in Spanish and English. *See* UF No. 5. Plaintiff's Father did not tell the "lady" that he was not Manuel C. Sedillos.  *See id*.  Plaintiff's

---

[1] It is unclear whether this holding was overruled by the United States Supreme Court in *Jerman v. Carlise, McNellie, Rini, Kramer & Ulrich LPA*, __ U.S. __, 130 S. Ct. 1605 (2010).  In *Jerman*, the Supreme Court held that "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute."  *Id*. at 1624.  Certainly, the Tenth Circuit's former rule that a mistake of law qualifies as a bona fide error defense has been overruled.  The *Riddle* court may have contemplated however that not all unintentional ***violations*** would stem from a mistake of law, as the Court noted that "we expressly decided that the FDCPA's bona fide error defense covers mistakes of law, and it would make little sense to require a debt collector to negate general intent for an error of law defense."  *Riddle*, 443 F.3d at 728.

6

Father's call was then transferred to Mr. Vignoli.  *See* UF No. 6.  There is no evidence that this "lady," thought to be UCB representative Patsy Quintana, informed Mr. Vignoli that Plaintiff's Father, and not Plaintiff, was on the telephone line.  There also is no evidence that Plaintiff's Father attempted to tell Mr. Vignoli he was not Manuel C. Sedillos when Mr. Vignoli picked up the line, even though the "lady" that Plaintiff's Father had previously spoken to had asked for Manuel C. Sedillos.  *See* UF No. 7-8.

Plaintiff's Father explained that Mr. Vignoli introduced himself and then began by asking "what **he** was going to do about **his** $12,000 debt."  *See* UF No. 7 (emphasis added).  Plaintiff's Father told him that his name was Manuel A. Sedillos.  *See* UF No. 8.  Mr. Vignoli then asked Plaintiff's Father if he knew a Manuel C. Sedillos.  *See id.*  At that point, Plaintiff's Father told Mr. Vignoli that Manuel C. Sedillos was his son.  *See id.*  Plaintiff' Father believes that Mr. Vignoli thought that he was speaking to Manuel C. Sedillos, the Plaintiff, up until Plaintiff's Father informed Mr. Vignoli that he was Manuel A. Sedillos.  *See id.*  Mr. Vignoli did not know that he was speaking with Plaintiff's Father when he asked him about Plaintiff's debt, but instead believed that he was speaking with Plaintiff.  *See* UF No. 9.  Mr. Vignoli explained within the Interview Form regarding the call with Plaintiff's Father that he "felt like [he] was deceived, father [was] trying to misrepresent himself by passing as son who has same name."  *See* UF No. 9; Exhibit E.  Mr. Vignoli also explained that "Father with same name identified himself as debtor then after verify[ing] reason of call claims was not debtor but father …."  *See id.*  Accordingly, the undisputed facts show that Mr. Vignoli did not intend to disclose information about Plaintiff's debt to Plaintiff's Father because Mr. Vignoli believed that he was speaking with Plaintiff.

Second, as to the "bona fide" prong of the bona fide error defense, the *Riddle* court explained that "'in effect, the [bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation.'" *Riddle*, 443 F.3d at 729.  As the facts above show, Mr. Vignoli's error was reasonable for four reasons: 1) Mr. Vignoli did not initiate the call to Plaintiff's Father and therefore did not know which number had been dialed; 2) Plaintiff's Father did not clarify that he was not Manuel C. Sedillos before the "lady" transferred the call to Mr. Vignoli; 3) Plaintiff's Father did not tell Mr. Vignoli that he was Manuel A. Sedillos until after Mr. Vignoli had introduced himself and asked about Plaintiff's debt; and 4) Plaintiff's Father and Plaintiff are both named Manuel Sedillos.  *See* UF Nos. 1-9  Under these circumstances, it was reasonable for Mr. Vignoli, who had not initiated the call or otherwise been informed that Plaintiff's Father was on the line, to the make the mistake of believing that he was speaking with Plaintiff.  *See id*.

Third, regarding the "procedures prong," the procedures in place by the debt collector must "by the express language of the statute, … be 'reasonably adapted to avoid' the error that occurred." *Riddle*, 443 F.3d at 729.  UCB had trainings and procedures in place at the time of this alleged call which would be adapted to avoid identity error and third party disclosure.  *See* UF No. 10-11; Exhibits G & H.  At the time of the alleged call, UCB had in place the Collection Manual which provides a copy of the FDCPA and specific instructions regarding the verification of identity, including the confirmation of the caller's full name with middle initial, last four digits of the caller's social security number, and the caller's address.  *See* Exhibit G at 10.  The UCB Manual specifically warns representatives when giving these confirmation instructions that:

> There may be times when the person on the phone may have the same name as the debtor you are looking for, but is not.  For example, you may be speaking with a son or daughter of the debtor who shares the debtor's name, or an unrelated third

> party acting as the debtor.  By confirming additional information, beyond one's
> name, you can better ensure you are speaking with the correct individual.

*See id*.  The UCB Manual also provides that representatives are "not to state that the debtor owes a debt" when speaking with a third party for location information.  *See id*. at 18.  UCB additionally provides its collection representatives with "UCB's FDCPA Overview," which again provides a copy of the FDCPA and also informs representatives that they were "not to state that the debtor owes a debt" when speaking with a third party for location information.  *See* Exhibit H at UCB 00289.

Mr. Vignoli disclosed Plaintiff's debt to Plaintiff's Father unintentionally because he believed that he was speaking with Plaintiff.  The circumstances surrounding the transferred call show that this unintentional error was reasonable.  UCB had in place policies and training materials which were adapted to avoid this error because such materials had specific instructions regarding identity verification and avoidance of third party disclosure.  Accordingly, the Court should find that UCB is entitled to a bona fide error defense pursuant to Section 1692k(c) regarding Plaintiff's claim for improper disclosure.

**B.    Plaintiff's Claim That Mr. Vignoli's Message For A Return Call Violated Section 1692c(b) Fails Because The Message Did Not Convey Debt Information Besides The Disclosure Covered By A Bona Fide Error.**

Plaintiff next claims that UCB violated 15 U.S.C. Sections 1692b and/or 1692c(b) because Mr. Vignoli had left a message with Plaintiff's Father for a return call from Plaintiff.  *See* Complaint, Doc. No. 1 at ¶¶ 22-23.  Specifically, Plaintiff claims that Mr. Vignoli left his telephone number and asked Plaintiff's Father to tell Plaintiff to call the telephone number as soon as possible.  *See id*.  Besides the allegation that Mr. Vignoli asked Plaintiff's Father what he was going to do about his debt, Plaintiff does not allege that Mr. Vignoli mentioned any further information about Plaintiff's debt.

Section 1692c(b) provides that:

> ***Except as provided in section 804 [15 USCS § 1692b],*** without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not ***communicate***, ***in connection with the collection of any debt***, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

(Emphasis added).  The exception noted in the opening line of Section 1692c(b) relates to Section 1692b's allowance for the acquisition of location information for the debtor from third parties:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
> (2) not state that such consumer owes any debt;
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;
> (4) not communicate by post card;
> (5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and
> (6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

Plaintiff appears to claim that both sections were violated by the message because the "communication" violated 1692c(b) and was not otherwise authorized by 1692b.  The analysis should however be framed as: 1) Did UCB violate 1692c(b); if so, then 2) Was the "communication" otherwise allowed by 1692b?  Plaintiff's claim fails on the first portion of this analysis because the alleged message for a return call was not a "communication" that violated 1692c(b).

10

Importantly, in order for a debt collector to have violated Section 1692c(b), the debt collector must have "communicate[d]" with a third party "in connection with the collection of any debt." § 1692c(b). The FDCPA definitions section provides that the "term 'communication' means the ***conveying of information regarding a debt*** directly or indirectly to any person through any medium." (Emphasis added). Therefore, in order to prove that UCB violated Section 1692c(b), Plaintiff must prove that Mr. Vignoli conveyed information regarding his debt.

In *Zamos v. Asset Acceptance, LLC*, the debt collector left a message with a representative of the debtor's former landlord that informed the third party that the collector worked for Asset Acceptance and that he was a debt collector. *Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 782 (N.D. Ohio 2006). The court held that this message did not violate Section 1692c(b) because the message did not "convey information relating to [the debtor's] debt liability in violation of the FDCPA." *Id*. In *Horkey v. J.V.D.B. & Assoc., Inc.*, the debt collector called the debtor's assistant and said to "tell [debtor] to quit being such a fucking bitch and then hung up." *Horkey v. J.V.D.B. & Assoc., Inc.*, 179 F. Supp. 2d 861, 867-68 (N.D. Ill. 2002). The court similarly held that this message did not violate 1692c(b) because although the collector used inappropriate language, he did not refer in some way to the debtor's debt. *Id*. In *Briggs v. Credit Collection, Inc.*, the debt collector had left two voice-mail messages that "'convey[ed]' no 'information regarding a debt.'" *Briggs v. Credit Collection, Inc*. 2007 U.S. Dist. LEXIS 84793, * 12-14 (W. Okla. 2007). The court held that "[t]he statutory definition [of a "communication"] does not include messages or communications that do not impart (or are not a least intended to impart) information about a debt." *Id*. at 13, n. 3.

Plaintiff does claim that Mr. Vignoli disclosed the amount of his debt to Plaintiff's Father at the beginning of the transferred call. However, as was explained extensively above, this

disclosure was the result of a bona fide error as described by Section 1692k(c).  Again, Section

1692k(c) provides that UCB "may not be held liable in ***any action*** brought under this title [15

USCS §§ 1692 et seq.] if" UCB proves that the "the violation" was a bona fide error.  Whereas

the message for a return call may have been intentional, the portion of the telephone call that

would have made the message a "communication" under 1692(a)(2) was an unintentional bona

fide error.  Indeed, Plaintiff does not claim that Mr. Vignoli conveyed any other information

about his debt to Plaintiff's Father.  The Court should therefore find that the message for a return

call was not a "communication" as required by Section 1692c(b) and accordingly grant judgment

in favor of UCB on this claim.

### C.   Plaintiff's Claim For A Violation Of Section 1692e Fails Because UCB Was Authorized To Collect The Debt That Plaintiff Owed To CitiBank.

Plaintiff vaguely claims that UCB's "actions violate the FDCPA," including 15 U.S.C.

Section 1692e(10).  Section 1692e(10) provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> …
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

The only conceivable allegation that Plaintiff could be referring to under Section

1692e(10) is the assertion that Mr. Vignoli told Plaintiff's Father that he was calling "from

CitiBank."[2]  *See* Complaint, Doc. No. 1 at ¶ 21.  Even if this allegation were true, which UCB

denies, Plaintiff has not explained how Mr. Vignoli's statement that he worked at CitiBank could

---

[2] UCB reserves the right to address any additional "misrepresentations" that Plaintiff may claim are at issue within its Reply Brief.  UCB notes however that this was the only conceivable "misrepresentation" that was actually alleged in Plaintiff's Complaint.

have helped UCB in collecting Plaintiff's debt.   Regardless, even if Mr. Vignoli did tell Plaintiff's Father that he was calling "from CitiBank," such a "false" statement could not establish a violation of Section 1692e(10) because it was not a material deception that could have confused or mislead Plaintiff or Plaintiff's Father regarding Plaintiff's debt.   Indeed, CitiBank had authorized UCB to collect the debt that Plaintiff owed to CitiBank.   *See* UF No. 12.

Materiality is a requirement for proving a violation under Section 1692e.   *See Donohue v. Quick Collect*, 592 F.3d 1027, 1033 (9th Cir. 2010) ("We now conclude that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f."); *Miller v. Javitch, Block and Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("Materiality is an ordinary element of any federal claim based on a false or misleading statement. … We do not see any reason why materiality should not equally be required in an action based on §1692e. … A statement cannot mislead unless it is material, so a false but non-material statement is not actionable."); *D'Avanzo v. Global Credit & Collection Corp.*, 2011 U.S. Dist. LEXIS 63823, * 11-15 (D. Colo. 2011) (Holding that "materiality" must be considered under a Section 1692e analysis.) (citing *Maynard v. Bryan W. Cannon, P.C.*, 401 Fed. Appx. 389 (10th Cir. 2010) (citations omitted).

In *Campuzano-Burgos v. Midland Credit Mgt.*, the signatures of two executive officers of the debt collection company appeared on the bottom of settlement letters sent out by the company.   *Campuzano-Burgos v. Midland Credit Mgt.*, 550 F.3d 294, 296-97 (3rd Cir. 2008). The executive officers authorized the mailings on a broad scale across the company, but did not write or sign the specific letters in the case.   *Id*. at 297.   The executive officers did not have any knowledge of the company's efforts to collect the plaintiffs' debts, the amounts of the plaintiffs'

debts, or that the letters were sent to the plaintiffs. *Id*. Indeed, the executive officers did not personally direct anyone at the collection company to send the letters to the plaintiffs. *Id*. The trial court held that "the use of top executives of the company as signatories is likely meant to impress upon debtors the seriousness of the communication and will almost certainly have such an effect on at least some debtors. … Because [the executives] in this case had no 'actual involvement in the decision to send the letter[s] to a particular debtor . . . the letters . . . are deceptive and misleading within the meaning of Section 1692e.'" *Id*. at 298.

The Third Circuit reversed however, reasoning in part that it was "immaterial that [the executive officers] did not personally write or authorize their staff to send the specific letters to plaintiffs. [The company] had authorized and approved the communications whose appearance and content reveal no personal efforts by the executives." *Id*. at 301. The Third Circuit noted that the plaintiffs' had not "alleged that the settlement letters were otherwise untruthful, incorrectly listed the amount of debt owed, made false statements about the debts' enforceability, or that [the collection company] never intended to honor the terms of the offer." *Id*. The Third Circuit also found that the potential misrepresentation was not to be judged with the "closer scrutiny" that is administered when the misrepresentation is that the letter had come from an attorney. *Id*.

The case at hand is analagous to *Campuzano* in these three aspects. First, it is "immaterial" that Mr. Vignoli did not actually work at CitiBank because CitiBank had authorized UCB to collect the debt that Plaintiff owed to CitiBank. *Id*. *See* UF No. 12. Therefore, there was no meaningful or "material" deception regarding Plaintiff's debt. Second, Plaintiff does not claim that Mr. Vignoli made any false statements about the debt owed or its enforceability. *Id*. Third, it is important that Mr. Vignoli did not claim to have been an attorney

14

or from some legal department, as this is the primary identity misrepresentation that is looked at with "closer scrutiny" by the courts.  *Id*.  Similar to the collection company in *Campuzano*, UCB did not violate Section 1692e under these allegations.   Accordingly, this Court should grant summary judgment in favor of UCB.

### II.       Plaintiff's Remaining Claim(s) Under The NMUPA Fail Because Plaintiff Has Not Suffered The Loss Of Any Money Or Property.

On August 17, 2011, this Court granted UCB's Motion for Partial Dismissal which dismissed Plaintiff's claim for injunctive relief and the vast majority of his claim under the NMUPA.  *See* Doc. No. 69.  The Court noted within its Order that UCB denied that Mr. Vignoli falsely claimed to work for CitiBank, but did not pursue dismissal of that portion of Plaintiff's claim.   The allegation that Mr. Vignoli "falsely" claimed to have called "from CitiBank" is the last conceivable claim that Plaintiff has under the NMUPA.  *See* Complaint, Doc. No. 1 at ¶ 21. This claim, as well as any other claim that Plaintiff may allege to have under the NMUPA, must fail because Plaintiff has not shown that he has lost any money or property as a result of UCB's alleged call.

NMSA Section 57-12-10(B) provides that:

Any person who suffers any loss of ***money or property***, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act [57-12-1 NMSA 1978] may bring an action to recover actual damages or the sum of one hundred dollars ($ 100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($ 300), whichever is greater, to the party complaining of the practice.

(Emphasis added); *Page & Wirtz Constr. Co. v. Solomon*, 110 N.M. 206, 211-12, 794 P.2d 349, 354-55 (1990) ("[R]ecovery of damages under paragraph (B) includes only those persons 'who suffer any loss of money or property.' The paragraph authorizes recovery of 'actual damages' or

the sum of one hundred dollars, whichever is greater.  ***However, in either case the aggrieved party must produce evidence of 'loss of money or property' as a result of the practice.***") (emphasis added); *see also Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1224 (D.N.M. 2011) ("Emotional distress damages are not available under the NMUPA.").  It does not appear that Plaintiff has even claimed any tangible loss of money or property in support of his NMUPA claim.   Plaintiff has claimed the non-economic damages of embarrassment, humiliation, aggravation, frustration, inconvenience, lost time, and lost privacy.  *See* Complaint, Doc. No. 1 at ¶ 31.   Within the "Request for Relief" section of Plaintiff's complaint, Plaintiff requested that the Court award:

    A.    Statutory and actual damages, for violations of the FDCPA.
    B.    Actual and punitive damages, in an amount to be determined at trial, for tortious debt collection.
    C.    Injunctive relief, enjoining UCB from calling third parties for any purpose except to confirm location information, (1) enjoining UCB from calling a third party when it already has the home address and/or phone number for the consumer; and (2) enjoining UCB from asking a third party to deliver a message to the consumer.
    E.    Such other relief as the court deems just and proper.

Plaintiff only requested relief for actual damages under his FDCPA and tortious debt collection claims, and not under the NMUPA.   Instead, Plaintiff only claimed an injunction under the NMUPA, which did not require a loss of money or property.   As was mentioned above, this injunctive relief was dismissed by this Court.  *See* Doc. No. 69.

    Even if a claim for the loss of money or property can be gleaned from such ambiguous assertions, Plaintiff did not prove such damages.  Plaintiff's Initial Disclosures did not provide any tangible measure for any of these damages, but instead stated: "[a]ctual damages in amount to be set by the jury."   *See* Plaintiff's Initial Disclosures, attached hereto as Exhibit I at 3. Furthermore, this Court recognized in its Order on UCB's First Motion to Compel, which requested the production of any documents that may prove damages in this case, that the "Court

reads Plaintiff's response as saying it has no specific documents beyond those identified as proving liability, thus he has nothing more to produce."  *See* Doc. No. 102.  Plaintiff has not supplemented his Initial Disclosures or responses to discovery requests to produce any documentation to support a loss of money or property.

Plaintiff has not even claimed a tangible loss of money or property in this case.  Even if such a claim can be drawn from the vague assertions of Plaintiff, he certainly has not provided any evidence of such tangible losses.   Accordingly, the Court should grant judgment in favor of UCB on any claim Plaintiff may have under the NMUPA.

### III.    **Plaintiff's Claim For "Tortious Debt Collection."**

With very little explanation, Plaintiff has claimed that "UCB's actions and omissions" somehow violated a "tortious debt collection" "doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970)."  *See* Complaint, Doc. No. 1 at ¶¶ 34-35.  In *Larragoite*, a creditor filed suit against two brothers for the payment of a credit card debt even though the creditor had knowledge that only one of the brothers actually owed the debt.  *Id*. at 385, 467 P.2d at 401.  The brother that did not owe the debt filed a counterclaim against the creditor to recover damages for the creditor's tactics.  *Id*.  The Court held that: "We now decide that improper conduct in ***knowingly and intentionally*** pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damages for an invasion of privacy."  *Id*. (Emphasis added).  Plaintiff's claim under this "doctrine," fails on three bases.  First, Plaintiff has failed to state a claim for relief under *Larragoite* because he has not claimed that UCB pursued Plaintiff's Father for Plaintiff's debt.  Indeed, even if Plaintiff made such a claim, it would fail because he would not have standing to assert the claim on behalf of Plaintiff's Father.  Second, even if this Court finds

17

that Plaintiff may bring a claim under this "doctrine," Plaintiff has still failed to state or prove a claim because the only damages at issue are emotional.  Third, again, even if this Court finds that Plaintiff may bring a claim under this "doctrine," it fails as a matter of law because Mr. Vignoli did not intend to disclose the debt to Plaintiff's Father.

> **A.    Plaintiff May Not Bring His Claim Under the "Tortious Debt Collection Doctrine," Especially Since Only Non-Economic Damages Are At Issue.**

Again, the *Larragoite* court held that an invasion of privacy action was proper under the circumstances where a creditor had sued an individual that it knew did not owe the underlying debt.  *Id*. at 385, 467 P.2d at 401.  The facts of the *Larragoite* case indicate that this tort was designed to protect individuals that did not owe a debt from having to defend themselves against a creditor who wishes to improperly force him or her to make payment.  Indeed, this Court very recently explained that "[t]his New Mexico tort concerns collection activity knowingly aimed at the wrong person, thus invading that person's privacy."  *Obenauf*, 785 F. Supp. 2d at 1224.  There are no allegations in this case that UCB was attempting to force Plaintiff's Father to pay Plaintiff's debt, and even if there were, Plaintiff's Father would be the only individual with standing to bring such a claim under *Larragoite*.

Plaintiff has further failed to state or prove a claim for relief because only emotional/non-economic damages are at issue in this case.  In *Garbin v. Lenahan*, this Court explained that a plaintiff which asserts a violation of the tortious debt collection doctrine under *Larragoite* fails to state a claim for relief if the "damages alleged solely are emotional."  *Garbin v. Lenahan*, 1:01-CV-00409, Doc. No. 16, ¶¶ 70-71 (D.N.M. Oct. 29, 2004) (unpublished) (citing *Smith v. City of Artesia*, 108 N.M. 339, 341, 772 P.2d 373, 375 (N.M. Ct. App. 1989)).  In *Garbin*, this Court denied plaintiff's claim for tortious debt collection even though it held that the plaintiff had

"suffered actual damages, including aggravation, inconvenience, lost time, anxiety, humiliation, fear, and upset." *Id*. at ¶ 32. Plaintiff's claimed damages in this case are virtually identical to the damages in *Garbin*: embarrassment, humiliation, aggravation, frustration, inconvenience, lost time, and lost privacy. *See* Complaint, Doc. No. 1 at ¶ 31. Even if this Court were to now determine that an economic damage has been alleged within these claims, Plaintiff's claim should still fail because, as was explained above, Plaintiff has not provided any tangible evidence to support any loss of money or property.

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Rule 12(h)(2) provides that the "[f]ailure to state a claim upon which relief can be granted" defense may be raised "by a motion under Rule 12(c)." Rule 12(d) further provides that if "on a motion under … 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Based upon the foregoing failure of Plaintiff to state a claim upon which relief can be granted under the *Larragoite* "doctrine," this Court should grant judgment in UCB's favor pursuant to Rule 12(c). Alternatively, if the Court must consider the fact that Plaintiff has not supplied evidence to support economic damages, the Court should grant summary judgment in favor of UCB under Rule 56.

       **B.**      **Alternatively, Plaintiff's Claim Fails Because None Of The Intentional Statements Made By Mr. Vignoli Would Upset The Sensibilities Of An Ordinary Person.**

Plaintiff will likely attempt to argue that the *Larragoite* "tortious debt collection doctrine" applies to every situation in which a debt collector uses "improper" debt collection tactics. In essence, Plaintiff will attempt to transform the *Larragoite* holding into an FDCPA without limitations, just as he attempted to do in his previously unsuccessful briefing under the

NMUPA.   The Court should follow its express holding in *Obenauf*, which was issued and published only months ago, that "[t]his New Mexico tort concerns collection activity knowingly aimed at the wrong person, thus invading that person's privacy."   *Obenauf*, 785 F. Supp. 2d at 1224.

However, Plaintiff's claim fails even if this Court were to consider it under the *Larragoite* "doctrine" and New Mexico invasion of privacy law.   Even if the allegations of the telephone call were assumed to be true, which UCB denies, it cannot be said that any intentional statement made by Mr. Vignoli would upset the sensibilities of an ordinary person.   The *Larragoite* court's holding specifically expressed a cause of action for "improper conduct in **knowingly and intentionally** pursuing a person to force payment of a debt" under an invasion of privacy theory.   *Larragoite*, 81 N.M. at 385, 467 P.2d at 401 (emphasis added).   Under New Mexico invasion of privacy law, "'A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other.' … liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities."   *Bitsie v. Walton*, 85 N.M. 655, 657, 515 P.2d 659, 661 (Ct. App. 1973).   "The right of privacy is to be applied to the individual of ordinary sensibilities, not the super-sensitive."   *Id*. at 658, 515 P.2d at 662.

The only allegation that could reasonably have been offensive to the individual of an ordinary sensibility is the disclosure of Plaintiff's debt of $12,000.   However, as was explained extensively above, Mr. Vignoli did not intentionally disclose Plaintiff's debt to Plaintiff's Father because he believed he was speaking to Plaintiff.   The only remaining allegations are that Mr. Vignoli stated that he was calling from CitiBank and that he left a message for Plaintiff to return the call.   As Plaintiff alleges, Plaintiff's Father believed that Mr. Vignoli was from CitiBank and

not from a collection company.  *See* Complaint, Doc. No. 1 at ¶ 21.  A telephone call from a bank representative to have a customer return the call cannot be said to violate the ordinary sensibilities of a reasonable person.  Since there was no intentional statement made by Mr. Vignoli that would upset the sensibilities of an ordinary person, Plaintiff's claim for "tortious debt collection" under *Larragoite* and New Mexico invasion of privacy law must fail. Accordingly, the Court should grant summary judgment in favor of UCB.

## IV.  Plaintiff's Damages Claims For "Inconvenience" And "Lost Time" Fail Because He Has Not Provided Any Tangible Support Or Documentation.

As was discussed extensively in Sections II and III(A) above, Plaintiff has failed to provide any tangible support or documentation for any of his actual damages claims.  Plaintiff has made it clear throughout this case that his plan is to simply turn these vague, conclusory damages claims over to the jury to decide what they are worth.  This theory simply cannot apply to the claims of "inconvenience" or "lost time," as such losses must be measured and proven in a tangible fashion since they are based on some kind of tangible loss.  *See Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 816 (N.D. Ill. 2001) (Holding that a plaintiff can recover for lost time and inconvenience only if he can "establish actual pecuniary loss.")    Since Plaintiff has failed to provide any tangible support or documentation for his claims of "inconvenience" and "lost time," this Court should grant summary judgment in favor of UCB on these claims.

## CONCLUSION

For the foregoing reasons, UCB requests that the Court grant judgment in favor of UCB as to all of Plaintiff's claims.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
   & SISK, P.A.

By: */s/ Zachary R. Cormier*
    Jennifer G. Anderson
    Zachary R. Cormier
    *Attorneys for the Defendant*
    Post Office Box 2168
    Albuquerque, New Mexico  87103-2168
    Telephone: 505.848.1800
    jga@modrall.com; zrc@modrall.com

WE HEREBY CERTIFY that on this 21st day of November, 2011, we filed the foregoing electronically through the CM-ECF system, which caused the following parties or counsel to be served by electronic means:

Richard N.  Feferman, Esq.
Charles Parnall, Esq.
Feferman & Warren
300 Central Ave. S.W.
Suite 2000 West
Albuquerque NM  87102

MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.

By: */s/ Zachary R. Cormier*
    Zachary R. Cormier