# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

---

MANUEL C. SEDILLOS

      Plaintiff,

vs.                                                  No.  10-CV-1063 WJ/WDS

UNITED COLLECTION BUREAU, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Plaintiff's Motion for Partial Summary Judgment, filed November 18, 2011 (**Doc. 112**).[1]  Plaintiff alleges that Defendant United Collection Bureau, Inc. ("UCB") violated federal and state debt collection statutes when it contacted his father in connection with a debt owed by Plaintiff.  Having considered the parties' briefs and the applicable law, I find that Plaintiff's motion is not well-taken and, therefore, is DENIED.

### Background

Plaintiff obtained a line of credit with CitiBank, and eventually fell behind in his payments on the account.  CitiBank then placed the account with UCB to collect.  Plaintiff alleges that UCB wrongfully contacted his father in connection with its attempts to collect the debt.  The complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15

---

[1] Both parties have moved for summary judgment.  *See* 114 (Deft's Mot. for Sum. J.).  However, the parties offer their version of "disputed" facts, and emphasize different facts in support of their motions.  For this reason, the Court will address each party's summary judgment motion separately.

U.S.C. §§ 1692 et seq. in Count I; Tortious Debt Collection in Count II, and violations of the

New Mexico Unfair Practices Act ("UPA"), NMSA 1978 §§ 57-12-1 et seq in Count III.  UCB

denies Plaintiff's allegations, and contends that at all times it complied with applicable laws,

rules and regulations in its attempts to collect the debt owed by Plaintiff to CitiBank.

 In the motion which the Court addresses here, Plaintiff seeks partial summary judgment

on Counts I and III, asserting violations of the FDCPA and the UPA.

 **I.**  **Undisputed Facts**[2]

 The major disputes in this case are not so much the facts themselves, but the parties'

interpretation of the facts as to whether Defendant's conduct violates the FDCPA and the UPA.[3]

A. <u>General Information Regarding the Parties and the account</u>

 Plaintiff in this case, Manuel C. Sedillos, lives in Belen, New Mexico, and is a

"consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.  UCB is a foreign corporation

whose principal business is the collection of consumer debts.  It regularly collects or attempts to

collect debts owed or due or asserted to be owed or due another. It has been engaged by multiple

creditors to do so.  UCB is a "debt collector" as defined by 15 U.S.C. § 1692a(6).  Mr. Sedillos

had a CitiBank account ("account"), which he used primarily for personal, family and household

purposes.  CitiBank placed the account for collection with UCB on July 17, 2010.

 Manuel A. Sedillos, age 73, is the father of plaintiff Manuel C. Sedillos. He resides in

---

 [2]  Supporting evidence for the facts as recited below can be found in the parties' briefs in the section setting forth the facts.  Plaintiff designates exhibits with numbers; Defendant designates exhibits with letters, thus eliminating the need to refer to exhibits according to party. For ease of reading, the Court will omit the majority of citations to the record, which are readily available from the parties' briefs.

 [3]  The Court will note which facts are disputed.

Hurley, New Mexico.

B.    Information in UCB's Possession at the Time of the Violations

On July 17, 2010, CitiBank supplied UCB with Plaintiff Sedillos's correct current

address, 12 Avenida de Mesa Verde, Belen, NM 87002, and correct current telephone number.

UCB accesses different file databases in order to obtain current information on their accounts,

e.g., from Experian, Lexis Nexis ("Lexis Placement File"), and Acollaid.  The Experian credit

report, as well as the Lexis Placement File provided Plaintiff's correct current address.  The

Lexis Placement File contained information concerning Mr. Sedillos's neighbors and relatives,

and identified Manuel A. Sedillos (Plaintiff's father) as a relative of Mr. Sedillos.  However, as

Defendant notes, the Lexis Placement File also listed an address for Plaintiff which was later

determined to belong to Plaintiff's father, and also listed Plaintiff himself as a potential

"relative."  *See* Ex. 5.   The Lexis Placement File provided the current mailing address of

Plaintiff's father as: P.O. Box 226, Hurley, NM 88043, and also included his current telephone

number.  This number was designated a code of "REL" in UCB's computer system, which

identifies the telephone number as belonging to a relative of the consumer debtor.  *See* Exs. 3, 6,

7 and 8 (Quintana Dep. at 55:20-23).  Mr. Sedillos's correct telephone number was designated a

code of "BES" in UCB's computer system, which identifies it as the best telephone number at

which to reach the consumer debtor.  *See* Exs. 6 (Collection Notes, lines 99, 103 and 106) and 7

(XPH Screen). When a UCB collector pulls up an account on UCB's computer system, the

collector views the "Front Screen" for the account.  On July 22, 2010, the "Front Screen" for Mr.

Sedillos's Account showed Mr. Sedillos's correct address and telephone number.  UCB

collectors view telephone numbers of a debtor's friends, relatives, and neighbors by entering the

3

"XPH Screen" in UCB's computer system.[4]  The XPH Screen for Mr. Sedillos's account showed

the telephone number for Plaintiff's father and the designation "REL." *See* Ex. 7.

C.      UCB's Collection Phone Calls

        On July 19, 2010, a UCB debt collector telephoned Mr. Sedillos's correct telephone

number but was unable to reach him or to leave a message.  Mr. Sedillos's voicemail box was

full.  On July 21, 2010, UCB sent a collection letter, dated July 22, 2010, by first class mail to

Mr. Sedillos's correct address.   On July 21, 2010, UCB again called Mr. Sedillo's telephone

number, but was unable to reach him or leave a message.  Mr. Sedillos's voicemail box was still

full.  On July 22, 2010, a UCB collector, Patsy Quintana, viewed the XPH Screen for Mr.

Sedillos's account to view telephone numbers associated with friends, relatives, and neighbors of

Mr. Sedillos.   That same day, Ms. Quintana placed a telephone call—the call on which this

lawsuit is based— to Plaintiff's father's telephone number, which showed on the XPH Screen

with the designation "REL." Plaintiff offers evidence that, at the time that she placed the call to

the phone number designated as "REL," Ms. Quintana believed that she was calling a relative of

Mr. Sedillos.  Ex. 8 at 61:15-21.  Defendant disputes this fact, contending that there is no

evidence that Ms. Quintana ever viewed either the "Front Screen" or the XPH Screen before

making the call.  Defendant supports this contention with testimony by Ms. Quintana that she

has no actual memory of the phone call or of the events in connection with the account notes.[5]

-------------------------------------------------

        [4]  According to the testimony of John Terry, Senior VP and general counsel for UCB, the
"X" in "XPH" is a symbol that sends an "instruction that there is going to be a following
command," and "PH" stands for "phone."  Ex. 3 at 130:6-12.

        [5]  *See* Ex. I at 43:5-7 (stating that she had no "actual memory" of the calls or of working
on the account); 50:22-51:2 ("What do you mean, how did I decide to pick up this account?  I
don't even remember this file, so I don't even really now what I did with this file."); 62:22-23
(stating that she had no memory of the call).

Viewing these statements in context, it appears that Ms. Quintana was basing her answers on her account notations. *See, e.g.* Ex. 8 at 61:1-10; 62-63.   I find that Ms. Quintana's inability to recall the events in question does not attenuate the reliability of her responses because (1) her answers were based on the notations which she made on the account, and (2) Ms. Quintana would have had to view one, if not both, the "Front Screen" and XPH Screen in order to obtain a telephone number before making the call.

During the call to Plaintiff's father, Mr. Vignoli disclosed to Plaintiff's father information in connection with collecting a debt from Mr. Sedillos as well as the amount of the debt.[6]  Parties dispute about some of the content of the phone call.  For example, there is a dispute about whether Mr. Vignoli told Plaintiff's father that he was calling *"from* CitiBank,"" rather than *"for* CitiBank."   Also, Plaintiff claims that Mr. Vignoli asked Plaintiff's father to deliver a message to Mr. Sedillo, while Defendant concedes only that Mr. Vignoli "may have" left such a message.   Parties do not dispute that Mr. Vignoli attempted to confirm Mr. Sedillo's current employment by asking whether Plaintiff still worked for the Department of Energy.  However, Plaintiff points out that during the call, Plaintiff's father was not asked to confirm or provide Mr. Sedillo's correct phone number or address.

The Court notes that there is a gap in Plaintiff's version of the undisputed facts regarding what transpired between the time Ms. Quintana placed the call and the point at which Mr. Vignoli took over the call.  Plaintiff states only that "[a]t some point during the phone call, Ms. Quintana's supervisor, Ruben Vignoli, began speaking with Plaintiff's [f]ather."  Defendant's

---

[6]  Plaintiff's version states that "UCB" made the disclosure.  However, it is uncontroverted that Mr. Vignoli was speaking to Plaintiff's father when the disclosure was made.  At any rate, Plaintiff's own evidence supports that Mr. Vignoli, and not Ms. Quintana, made the disclosure.  *See* Ex. 14 (Pltff's Aff.).

additional facts A through M attempt to fill in this gap, stating that at the time Mr. Vignoli took

over the call, he believed that he was speaking with Plaintiff, and not Plaintiff's father, when he

asked about Plaintiff's debt.  The Court agrees that these statements interpret the facts as

Defendant sees them.  However, Defendant offers evidence which supports the additional facts

presented, and the Court considers that evidence as part of Defendant's bona fide error defense.

D.      UCB's Policies and Procedures

        Plaintiff contends that UCB has written policies, procedures and guidelines concerning

contacts with third parties.  *See, e.g.,* Ex. 21 (regarding communications that a debt collector

may have with a third party; Ex. 20 at 2 (communication with third party for purpose of

acquiring location information about debtor).  However, based on the Court's review of the

evidence submitted by Plaintiff on this issue, UCB's written policies appear to be in compliance

with the letter and spirit of the FDCPA statute regarding contact of third parties.  For example, as

noted by Plaintiff himself, UCB policy requires a collector to confirm a debtor's entire name,

including middle name or initial, the debtor's address, and the last four digits of the debtor's

social security number or the debtor's date of birth, in order to be certain the collector is

speaking with the debtor.  *See* Pltff's Undisp. Fact 42.  Defendant does not dispute that its

representatives are required to confirm the identity information in order to avoid the error of a

disclosure based on a mistaken identity.

        Plaintiff presents no evidence showing that UCB policies, procedure and guidelines do

not comply with the FDCPA.  Plaintiff's main argument seems to be that UCB "standard

procedure," despite its written policy, is to ask the third party to deliver a message to the debtor.

While Plaintiff offers some evidence that UCB employees understand that they are expected to

leave messages with a third party for the debtor to call back, Defendant also offers considerable

6

evidence that doing so is not required in all situations.  Further, it is not clear that leaving a message with a third party is in itself always a violation of the FDCPA, as the Court will discuss further in these findings.

As part of his presentation of undisputed facts, Plaintiff also presents purported evidence of UCB's history of "illegal third party contacts" in the form of 27 unadjudicated lawsuits against UCB, and reference to 312 administrative and regulatory complaints alleging illegal contacts with third parties.  Plaintiff contends that this evidence is appropriate as "absence of mistake" under Fed.R.Evid. 404(b) in that UCB's history of illegal third party contacts shows it acted intentionally in violating the FDCPA in this case.  The Court agrees with Defendant that this evidence is improper and inadmissible.   The filing of a complaint does not establish liability.  Also, there is no way to know whether the facts in any of these other cases align identically with the facts in this case.  Complaints filed against UCB involving other facts and parties are only tangentially related to the factual issues in this case, and a proper consideration of this evidence would force UCB to put on a defense for hundreds of lawsuits, even if the facts in those cases were factually identical to the instant case.   As a result, I find this evidence to be more prejudicial than probative.  Because the Court is the fact finder in this case, there is arguably less risk that the admission of such evidence would lead to confusion and undue prejudice.[7]  Nevertheless, I find that the evidence is neither material nor relevant to the issue of UCB's liability under either the FDCPA or the UPA, and thus will not be considered as part of the "undisputed facts" for purposes of Plaintiff's motion.

**II.     Legal Standard**

_____

[7] Defendant recently withdrew its jury demand.  Doc. 136.

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 5(c).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999).  When the parties to an action file cross motions for summary judgment, a court is entitled to assume that no evidence needs to be considered other than that filed by the parties.  *Atlantic Richfield Co. v Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000).  Summary judgment is not appropriate if disputes remain as to material facts.  *Id.*   In this case, the parties have stipulated to certain facts, *see* Court's Scheduling Order, Doc. 27, which present a sufficient basis on which to grant summary judgment to one of the parties.

## Discussion

### I.        FDCPA Claim

As part of his FDCPA claim, Plaintiff alleges that Defendant violated the FDCPA by calling Plaintiff's father, disclosing information about Plaintiff's debt, and then asking the father to deliver a message to Plaintiff.

The FDCPA prohibits debt collectors from communicating with third parties regarding the debtor's debt without the consumer's consent:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).  Other than having the debtor's consent, the FDCPA permits contact with third parties for the "acquisition of location information":

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall--

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt; . . .

15 U.S.C. § 1692b.  "Location information" means a "consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

A.      Disclosure of Debt

It is undisputed that Mr. Vignoli disclosed the existence and amount of Plaintiff's debt to Plaintiff's father.  Defendant seeks the protection of a "bona fide error" defense, claiming that Mr. Vignoli believed that he was speaking with Plaintiff, and not with Plaintiff's father, when he made that statement.  The FDCPA provides for a bona fide error defense where a defendant satisfies his burden of proving that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error.  *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006) (citation omitted).  While the "intent" prong of the bona fide error defense is a subjective test, the bona fide and the procedures prongs are objective tests.  *Id*. at 728-29.

1.      *Whether act was intentional*

Plaintiff contends that the information on UCB's Front Screen and XPH Screen was clear enough that the disclosure was not intentional, and that Ms. Quintana knew she was calling a relative of Plaintiff.  However, Defendant has presented evidence that the screens which contained information on relatives also listed Plaintiff's information as well, as well as evidence that supports Defendant's contention that Ms. Quintana and Mr. Vignoli initially believed they were speaking with Plaintiff.  Ms. Quintana had no recall of the incident, and her answers were

based solely on the written account notations.  The affidavit of Plaintiff's father is also consistent

with Defendant's position that the disclosure was unintentional:

> I received a phone call at 9:39 am on July 22, 2010.  The lady who called asked
> for Manuel C. Sedillos.  I guess I was studdering [sic], so she put a man on
> the line named Ruben.  He asked what I was going to do about a debt of $12,000 or
> so.  I told him my name was Manuel A. Sedillos.  He asked me if I knew Manuel
> C. Sedillos.  I told him he was my son.  He asked me if he worked for the
> Department of Energy.  Then he told me he was from CitiBank, he gave me his
> phone number. . . Then he told me to tell my son to get in touch with him as soon
> as possible.

Ex. 14.  Defendant claims that the person who answered the phone spoke in Spanish.  Plaintiff's

own evidence shows that there was some communication difficulty or misunderstanding, at

which point, Ms. Quintana passed the phone to Mr. Vignoli.  Thus, whether or not Ms. Quintana

was under the expectation that she was calling the residence of a "relative," she did not receive a

definitive response to her initial inquiry regarding who was on the other end of the call.

Plaintiff's affidavit also indicates that after being informed that the person on the phone was not

Plaintiff, Mr. Vignoli made no further disclosure or inquiry about the debt, and immediately

switched his questions to direct information regarding Plaintiff's place of employment, which is

considered a request for "location information" under the FDCPA.  This evidence supports

Defendant's contention that Mr. Vignoli believed he was talking with the debtor initially until

being informed otherwise by Plaintiff's father.  Defendant has met its burden on the first prong

of the bona fide error defense.

> 2.      *Whether the error was bona fide*

Defendant also meets the requirements on the second prong, which inquires into the

reasonableness of the error.  It is undisputed that Ms. Quintana placed the call to Plaintiff's

father's telephone number.  It is also undisputed that Mr. Vignoli did not initiate the call, but was

passed the phone by Ms. Quintana after she made the call.  According to Plaintiff's own evidence, the "lady who called" asked for Manuel C. Sedillos.  Ex. 14.  Ms. Quintana handed the phone to Mr. Vignoli.  There is no evidence that Ms. Quintana informed Mr. Vignoli that she had reached Plaintiff's father, instead of Plaintiff.     Mr. Vignoli easily could have assumed that Ms. Quintana had reached the person she had asked for.  Plaintiff's father stated that  he was "studdering" in response to Ms. Quintana's inquiry.  Any failure on Ms. Quintana's part to verify the identity of who she was speaking with was reasonable, given the language difficulty between Ms. Quintana and the person who answered the phone.  It was also reasonable to assume that Mr. Vignoli took the phone call, thinking it was Plaintiff on the line, and thus reasonable to believe that Mr. Vignoli's disclosure about the debt was being made to the debtor.  Plaintiff's father did not identify himself as someone other than Plaintiff until after Mr. Vignoli had introduced himself and disclosed information about the debt.

Further, the evidence shows that Mr. Vignoli spoke to the person on the phone as though he were the debtor.  Plaintiff contends that Mr. Vignoli did not believe he was speaking to Plaintiff because he asked Plaintiff's father what he was going to do about "a debt" or "the debt," as opposed to "*his* debt."  This argument makes little sense.  First, the Complaint alleges that the UCB representative asked the father what he was going to do about *his* debt —strongly suggesting that the collector believed he was speaking to the Plaintiff.  *See* Compl., ¶ 17 (emphasis added).  Second, use of the article "a" (as stated in the father's affidavit, Ex. 14) or "the," is not inconsistent with the assumption that the UCB representative was speaking with the debtor.[8]

---

[8]  Plaintiff's argument would have some teeth to it had Mr. Vignoli asked Plaintiff's father, "What are you going to do about your *son's* debt"?  Plaintiff, however, makes no such

Parties have submitted supplementary briefs (Docs 128 & 129) on a related issue, which the Court finds appropriate to mention here.  Plaintiff objects to the Court's consideration of Defendant's Exhibit E, which is an unsworn statement purported to be an "interview form" written by Mr. Vignoli, who cannot be found, and who has not provided testimony in this case. *See* Doc. 128 at 1.  In that statement, Mr. Vignoli states that during the phone call at issue in this case, the "[f]ather with same name identified himself as debtor. . . ."  Mr. Vignoli further states that he was "decieved" [sic] by the father "trying to misrepresent by passing as son who has same name."  The Court rejected Plaintiff's argument that Defendant had raised arguments concerning this exhibit in the reply for the first time.  The Court rejected this argument, and ruled that the Court would consider the supplemental briefs that were filed, without the need for further briefing.  Doc. 137.

Plaintiff contends that Exhibit B is hearsay, and does not come within any category of exceptions, including the "state of mind" exception under Fed.R.Evid. 803(3) or the business record exception under Rule 803(6).  The Court agrees that Mr. Vignoli's statements are hearsay, presented for the purpose of supporting Defendant's position that Mr. Vignoli did not know, and could not know, that he was speaking to Plaintiff's father instead of Plaintiff.  The Court also agrees that the exhibit is not admissible under the state of mind exception because the statement in question is factual, and not an expression of mental, emotion, or physical condition.  *See, U.S. v. Mandel*, 437 F.Supp. 262, 264 (D.Md. 1977).  Also, Exhibit E does not qualify under the business records exception because it appears that Mr. Vignoli's statement was prepared in anticipation of litigation.  Mr. Vignoli disclosed the debt to Plaintiff's father on July 22, 2010.

---

assertion, nor can he, based on the record.

The very next day, a law firm called UCB regarding the disclosure of the debt to Plaintiff's father.  According to its collection notes, UCB was told that Plaintiff intended to sue UCB for this disclosure.  Ex. 30 (Collection Notes); *Timberlake Const. Co. v. U.S. Fidelity & Guar. Co.*, 71 F.3d 335 (10th Cir. 1995) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business) (citation omitted).

While the Court's determination on the Exhibit E issue favors Plaintiff, it has little, if any impact on the Court's conclusion concerning Defendant's bona fide error defense.  Plaintiff claims there is a dispute about what UCB said to Plaintiff's father, but the Court finds that Defendant has presented evidence which strongly suggests that Mr. Vignoli thought he was speaking with Plaintiff when Ms. Quintana first handed him the phone.   Based on the father's affidavit, the information available to the collector on the "home" and "front"screens, the facts concerning the conduct of Ms. Quintana and Mr. Vignoli, Defendant has presented evidence which supports a bona fide error defense, thus precluding summary judgment for Plaintiff on the disclosure issue.

    *3.*      *UCB Policies*

The last hurdle for Defendant on the bona fide error defense is a showing that UCB's procedures were reasonably adapted to avoid the error that occurred, that is, the disclosure of debt to a third party.   Plaintiff contends that UCB's standard procedure is to ask the third party to deliver a message to the debtor.  However, there is nothing anywhere in UCB written policies which *requires* collectors to leave messages for third persons.  *See* Ex. G at 18; Ex. H at 2; Ex. J (Terry Dep.) at 118:14( ("We would not ask our collectors to try to leave a message and have them deliver it to somebody, that is not our policy.")  Rather, collectors were told to leave messages where appropriate.  *See* Ex. J at 118:21-119:10; 139:3-15; 140:9-16.  Plaintiff contends

13

that Ms. Quintana's responses in her deposition indicate that she felt comfortable leaving

messages for the debtor with third parties:

Q.    So when you are calling relatives and spouses and children, how do you handle that call,
      what do you say?

A.    I am looking for this individual, they tell me he doesn't live there, this is the wrong
      number, I ask them, is it possible to take a message to relay to them?

Q.    And is this what you are trained to do by UCB?
      . . .

A.    Yes, it is.

Ex. 8 at 37: 22 – 38:7.

      and

Q.    Do you have any memory of the call?

A.    No, no.

Q.    How would you have known that it was the debtor's dad?

      . . .

A.    Evidently, he said he was the father, that is why I said, debtor's dad, he must have told
      me he was his father.
      . . .

Q.    Okay.  It says, said debtor was not [sic].

A.    They didn't finish putting it in there.  The debtor was not there, that is a typo, there.
      Yeah, he wasn't there, so I asked him to give the message.

Q.    All right.  And what message would you have asked the debtor – the debtor's dad to give
      to the debtor?

A.    My telephone number, my name, and his reference number. . .
      . . .

Q.    And that is your standard message; is that right?

A.    Yes.

14

Ex. 8 at 62:22– 23:20[9]

      and

Q:     Well, UCB says that is collection manual teaches you that, and I want to know what UCB has taught you as far as how to correctly leave messages.
     . . .

A.     They tell us on third-parties, all you do, leave your name, your telephone number, and your hours of operation, that is all that you can do.

Ex. I at 80:11-18.

      While this is some evidence that Ms. Quintana understood that she was trained to leave a message with third parties for the debtor to call her back, *see* Ex. 8 at 37-38, her statements are not necessarily inconsistent with UCB's position that a representative may leave a message with a third party only when appropriate.

      Approaching the issue from another angle, Plaintiff contends that UCB failed to adequately train collectors that they cannot leave messages with third persons, based on Ms. Quintana's statements in her deposition. *See* Ex. 8 at 37:22-25; 38:1-7; 61:1-2; 63:10-20; 78:17-25. This particular argument rides on a finding by the Court that leaving messages with third persons is, in itself and at all times, a violation of the FDCPA. The Court, however, rejects such a wholesale argument, and thus, Plaintiff's claim for a violation of § 1692c cannot survive on that basis alone. *See* discussion, below.

      Accordingly, Defendant has presented sufficient factual evidence to preclude granting summary judgment to Plaintiff on the third prong of the bona fide error defense associated with the adequacy of UCB's policies and procedures.

---

     [9] Ms. Quintana's responses were based on her reading from the account notations regarding the call made to Plaintiff's father.

B.      Third Person Contact—Leaving Message with Plaintiff's Father

       Plaintiff contends that UCB violated the FDCPA because leaving a message with a third

person does not come within communication allowed with third persons under 15 U.S.C. §

1692b.   Defendant takes the position that asking Plaintiff's father to deliver a message to

Plaintiff is not a "communication" under the FDCPA.   It is undisputed that Mr. Vignoli left this

message with Plaintiff's father.   The question is whether, as a matter of law, this constitutes

"communication" under the FDCPA, and if so, whether it is "communication" which is

prohibited under the statute.[10]

       The FDCPA defines "communication" as the "conveying of information regarding a debt

directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).   The Court

sides with Defendant on this issue.   Plaintiff submits several cases which purportedly hold that a

debt collector violates the FDCPA when it asks a third party to deliver a message to a consumer.

However, those cases are either not factually apposite, or interpret § 1692b more broadly than

the Tenth Circuit does.[11]

---

    [10]   The Court notes that the portion of the phone call in which a disclosure of debt
information was made would certainly qualify as "communication" under the FDCPA.
However, the Court has found that Defendant has submitted sufficient evidence that the
disclosure was an unintentional bona fide error.  Thus, the only portion of the call under
consideration in this section is the leaving of a message with the father for Plaintiff to return the
call to UCB.

    [11]   A good number of the cases cited by Plaintiff are unpublished opinions.  For example,
in *Krapf v. Collectors Training Institute of Illinois, Inc.*, unpubl. opin., 2010 WL 584020, *5
(W.D.NY 2010), the collector placed two calls to Plaintiff's employer as a means of inducing
plaintiff to return defendant's calls.  The collector did not make any inquiries at all for location
information, unlike the instant case.  Plaintiff also cites to *Wideman v. Monterey Financial
Services, Inc.,* unpubl. opin., 2009 WL 1292830 (W.D.Pa.,2009), in which case the collector also
left a message with a third party, left contact information but requested no location information
regarding the debtor.  In *Thomas v. Consumer Adjustment Co., Inc.*  579 F.Supp.2d 1290, 1297
(E.D.Mo.,2008), the court concluded that the phone call in question did not comply with the

The Tenth Circuit takes the approach that a court must first look at the content and nature of the message before determining whether it qualifies as a "communication" for purposes of the FDCPA.  In *Marx v. General Revenue Corp.*, --- F.3d ----, 2011 WL 6396478, *2 (10th Cir. 2011), plaintiff defaulted on her student loan.[12]  Her guarantor hired a collection agency, the defendant, to collect on the account.  Plaintiff sued the agency, alleging abusive and threatening phone calls in violation of the FDCPA.  The defendant then made an offer of judgment, which plaintiff did not accept.  Instead, she amended her complaint to add a claim that defendant violated the FDCPA by sending a facsimile to her workplace that requested information about her employment status.  After a bench trial, the district court found no violation of the FDCPA and awarded costs to defendant.  The Tenth Circuit affirmed the district court's holding that the facsimile was not a "communication" under the FDCPA because it did not "convey" information "regarding a debt."

>  The facsimile in question is not a "communication" under the FDCPA.  A
>  third-party "communication," to be such, must indicate to the recipient that the

---

"safe harbor" provisions of § 1692b, because it did not seek to obtain, confirm, or correct location information.  Instead, the collector spoke with a third party at the debtor's place of abode and, after being told that the debtor was not there, asked for a "better number" at which he could be reached.  The court concluded that this was not a proper request for location information because it did not seek information on the consumer's "place of abode and his telephone number at such place, or his place of employment."  *Id.*

Plaintiff also refers to other cases which have found that messages left with third parties are "communications" under the FDCPA, without regard for the specifics or content of the message left behind by the collector.  *See, e.g.*, *West v. Nationwide Credit, Inc.*, 998 F. Supp. 642, 643 (W.D. N.C. 1998); *Belin v. Litton Loan Servicing, LP*  2006 WL 1992410, 5 (M.D.Fla.) (M.D.Fla.,2006) (collector's "demand" that third party have debtor call back was a "communication" under the FDCPA).

[12] Only the Westlaw cite is currently available.  The parties filed a joint notice advising the Court of this recent case, written by the Hon. Paul J. Kelly, and a dissent authored by the Hon. Carlos F. Lucero of the Tenth Circuit Court of Appeals. *See* Doc. 130.

message relates to the collection of a debt; this is simply built into the statutory definition of "communication." This fax cannot be construed as "conveying" information "regarding a debt." Nowhere does it expressly reference debt; it speaks only of "verify[ing] [e]mployment." Nor could it reasonably be construed to imply a debt. In order to substantiate the claim that the facsimile "conveys" information "regarding a debt," either "directly or indirectly," Ms. Marx had the burden of proving such a conveyance; the standard is not whether the facsimile could have had such an implication. No testimony shows that Ms. Marx suffered any actual harm (such as embarrassment or a denial of promotion) or that her employer was aware that the facsimile in any way concerned a default on a student loan.

*Marx v. General Revenue*, 2011 WL 6396478, *2.[13]

The Tenth Circuit's interpretation of what "communication" means under the FDCPA is

consistent with the statute's legislative history:

> In addition, this legislation adopts an extremely important protection recommended by the National Commission on Consumer Finance and already the law in 15 States: it prohibits disclosing the consumer's personal affairs to third persons. Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs.

P.L. 95-109, Consumer Credit Protection Act, S. Rep. No. 95–382, reprinted at 1977 U.S. Code

& Admin. News 1695, 1699 (cited in *West v. Nationwide Credit, Inc*., 998 F.Supp. 642, 645

(W.D.N.C.,1998). Plaintiff highlights the portion of the report pertaining to the prohibition

against contact of third persons. *See* Doc. 115 at 14. However, what is as important is the

previous sentence in the section which relates to the purpose behind the legislation: "it prohibits

the disclosing the consumer's personal affairs to third persons." Thus, an examination into the

---

[13] Judge Lucero dissented on the basis that the majority "engrafted" additional element onto the statute's definition of "communication" by requiring the recipient of the alleged "communication" to know or be able to infer that a debt is concerned. 2011 WL 6396478 at *8. However, the majority found that such a requirement was "implicit" in the statutory language by the word "convey." *Id*., at *10.

nature of message conveyed, either spoken or written, is appropriate as part of the inquiry in order to determine whether a violation has occurred.

In addition, Defendant has presented decisions from other jurisdictions which follow the Tenth Circuit's approach in that they conduct an examination of the message or communication before determining whether it constitutes a "communication" as defined under the FDCPA. *See, e.g.*, *Horkey v. J.V.D.B. & Associates, Inc.* 179 F.Supp.2d 861, 864 (N.D.Ill.,2002) (collector's use of inappropriate, profane language to debtor's co-worker regarding the debtor was limited to Plaintiff's whereabouts and therefore was not "communication" under the FDCPA).[14]  In *Zamos v. Asset Acceptance, LLC* 423 F.Supp.2d 777, 782 (N.D.Ohio, 2006), the collector's telephone call informed the plaintiff's landlord that he was a debt collector.  The court found that plaintiff failed to raise a genuine issue of material of fact that the content of defendant's communications included the conveying of information relating to plaintiff's debt liability in violation of the FDCPA.  Similarly, in *Biggs v. Credit Collection, Inc*., unpubl. opin., 2007 WL 4034997 (W.D.Okla.,2007), the court acknowledged that the statutory language "is oddly narrow." While the voice mails at issue "would have been encompassed by a definition that included 'a communication in furtherance of any attempt to collect a debt,' they are not included in a definition which encompasses communication "that do not impart (or are not at least intended to impart) information about a debt.  *Id*., at *4 n.3.

Finally, Plaintiff submits a letter written by an attorney employed by the Federal Trade Commission, providing a "staff interpretation" of § 1692b of the FDCPA.  The letter, dated June

---

[14]  The collector did not escape altogether from the reach of the statute.  The court found that the collector's use of profane language violated § 1692d(2), which prohibits "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader."  179 F.Supp.2d at 868.

15, 1978, is addressed to an attorney and states that § 1692b "may have been violated" where a debt collector called neighbors of the attorney's client on several occasions, left a name and telephone number without identifying itself as a debt collector, and a request that a message be delivered to the client. Ex. 28 ("Faulkner Letter"). Reliance on this exhibit as "evidence" of UCB's liability for leaving a message with Plaintiff's father is clearly overreaching on Plaintiff's part. The Faulkner Letter is nothing more than a non-binding, thirty-four year old advisory opinion from a staff member at a federal agency, which is not binding on any court or the agency itself, for that matter.[15]

The conclusion the Court comes to at the end of all this is that leaving messages for third parties to have a consumer contact the collector does not violate the FDCPA unless it conveys information regarding a debt directly or indirectly. Unless it does, such conduct does not constitute "communication" prohibited under the statute. There is no evidence that in leaving a message for Plaintiff's father to have Plaintiff return the call to UCB, Defendant conveyed any information regarding Plaintiff's debt, either directly or indirectly. Plaintiff is not entitled to summary judgment based on this conduct.

Plaintiff contends that even if the Court rules in favor of UCB's bona fide error defense (which it essentially has done in these findings), the Court nevertheless has to award summary judgment against UCB for failing to disclose its identity in a "meaningful" way and failing to declare that it was attempting to collect a debt and any information would be used for that purpose. However, Plaintiff offers no argument or case law to support this proposition except

---

[15] The letter states that "[t]he views afforded you represent the staff's present enforcement position. They are informal in nature and do not necessarily reflect the views of the Commission. Accordingly, the views expressed herein are not binding on the Commission." Ex. 28 at 2.

for the one paragraph which contains the aforementioned contention.  Doc.123 at 6.

"Meaningful disclosure" is made when the individual debt collector who is employed by a debt collection company "accurately discloses the name of her employer and the nature of her business and conceals no more than her real name." *See Fashakin v. Nextel Communications*, 2009 WL 790350, *7 (E.D.N.Y. 2009).  Plaintiff offers an interesting proposition, one in which a debt collector would always lose, whether or not "meaningful disclosure" was made to third parties: "meaningful disclosure" to a third party would allow a plaintiff to argue that any communication—even communication limited to disclosure of the collector's employer—would "infer" information about a consumer's debt.  The collector would also lose, under Plaintiff's interpretation of FDCPA requirements,  if he fails to make this level of disclosure to third parties.

The reason why Plaintiff's argument fails on legal grounds is that the FDCPA requires "meaningful disclosure" to the *consumer* directly, not third parties.  *See Fashakin*, 2009 WL 790350, *8 (finding that the meaningful disclosure requirements only apply "when the telephone calls being placed are made directly to the consumer or some other party with whom the consumer has consented to allow the debt collector to communicate," and that debt collectors "may not make a meaningful disclosure of identity to this third-party without running afoul of the privacy-protective provisions of the FDCPA."); *see also Doshay v. Global Credit Collection Corp.*, 796 F.Supp.2d 1301, 1304 (D.Colo. 2011).

Accordingly, Plaintiff is not entitled to summary judgment on his FDCPA claims because Defendant has submitted significant evidence which supports Defendant's bona fide error defense; and the act of leaving a message for the father for Plaintiff to call back UCB is not a "communication" under the FDCPA because it conveyed no information regarding Plaintiff's

debt, directly or indirectly.  The remainder of the phone call provides no grounds for any

FDCPA violation, since Mr. Vignoli's request about Plaintiff's employment is allowed as

"location information" under the FDCPA.

**II.     Violations of the FDCPA and UPA Based on Misrepresentation**

Plaintiff contends that in falsely representing to Plaintiff's father that he was calling

"from CitiBank," Mr. Vignoli violated both the FDCPA and the UPA.  As stated above, the

parties dispute exactly what Mr. Vignoli told Plaintiff's father.  For purposes of this motion, the

Court must view the facts favorably to Defendant as the non-movant.  According to those facts,

Mr. Vignoli stated to Plaintiff's father that he was calling "*for*" CitiBank.  In that case, there is

clearly no violation, under either the federal or state statute, and Plaintiff would be denied

summary judgment on this claim.  However, the Court also finds that there is little merit to this

claim as a matter of law because, even assuming Plaintiff's version of the facts on this issue as

true, Plaintiff would still not be entitled to summary judgment.

A.     Misrepresentation Under 15 U.S.C. § 1692

The FDCPA states that "[a] debt collector may not use any false, deceptive, or

misleading representation or means in connection with the collection of any debt." § 1692e.

Section 1692e(10) specifically prohibits "[t]he use of any false representation or deceptive

means to collect or attempt to collect any debt or to obtain information concerning a consumer."

The FDCPA "does not result in liability for every statement later alleged to be inaccurate, no

matter how small or ultimately harmless." *D'Avanzo v. Global Credit & Collection Corp.*,  2011

WL 2297697, 4 (D.Colo.) (D.Colo.,2011) ("A statement cannot mislead unless it is material, so a

false but non-material statement is not actionable.").  Thus, materiality must be considered under

a § 1692e analysis. *Id.*          .

The Court finds a Third Circuit case offered by Defendant particularly helpful.  In *Campuzano-Burgos v. Midland Credit Mgt.*, plaintiffs alleged that the signatures of top executives of a debt collection company were deceptive and misleading because those officers did not personally direct anyone at the collection company to send letters to the plaintiffs.  550 F.3d 294, 296-97 (3rd Cir. 2008).  The district court agreed with plaintiffs, finding that because the executives whose signatures appeared on the letters had no actually involvement in the decision to sent the letters, the letters were "deceptive and misleading within the meaning of Section 1692e." *Id*.  The Third Circuit reversed the district court's decision, finding it immaterial that the executive officers did not personally write or authorize their staff to send specific letters; they nevertheless had authorized and approved the communication even though the executives had not personally directed the letters.  The letters were not otherwise untruthful, did not incorrectly list the amount of debt owed, or make false statements about the debts' enforceability.

The situation in *Campuzano* is similar to the situation in the instant case.  Plaintiff could not have been misled or deceived in being told by Mr. Vignoli that he was calling "from" CitiBank.[16]  Mr. Vignoli did not claim to be from a fictitious entity.  Plaintiff does not dispute that CitiBank authorized UCB to collect the debt which Plaintiff owed to CitiBank; nor does he claim that Mr. Vignoli made any false statements about the existence or amount of the debt.

The only rebuttal Plaintiff offers is a Seventh Circuit case which involves a collection letter sent from a debt collector purporting to be an attorney.  *See Avila v. Van Ru Credit Corp.*,

---

[16]  Although Mr. Vignoli spoke with Plaintiff's father, the analysis for a misrepresentation claim appears to be the same as if Mr. Vignoli had spoken with Plaintiff himself.

84 F.3d 222, 229 (7th Cir. 1996).[17]  This case does not help Plaintiff at all.  Falsely holding

oneself out as an attorney instead of a debt collector would warrant much "closer scrutiny"

because under the FDCPA, "attorney debt collectors warrant closer scrutiny because their

abusive collection practices 'are more egregious than those of lay collectors.'" *Campuzano*, 550

F.3d at 301.  Plaintiff does not allege—nor is there any evidence—that Mr. Vignoli tried to pass

himself off as an attorney.  If he had, Plaintiff would have had a viable misrepresentation claim.

Accordingly, I find that Defendant has presented substantial evidence to strongly infer

that, even if Mr. Vignoli told Plaintiff's father he was calling "from" CitiBank, such a statement

is not a material misrepresentation under § 1692e.   As a result, Plaintiff is not entitled to

summary judgment on this claim under the FDCPA.

B.     Misrepresentation Under the UPA[18]

Plaintiff seeks summary judgment based on Mr. Vignoli's false representation that he

was calling "from CitiBank."

The prove a violation of the UPA, a plaintiff must show that (1) the defendant made an

"oral or written statement, visual description or other representation . . . that was either false or

misleading"; (2) the misrepresentation was "knowingly made in . . . the collection of debts"; (3)

---

[17]  *Cmp.  Rosenau v. Unifund Corp.*, 539 F.3d 218 (3rd Cir. 2008) (holding that collection
letter from "legal department" that employed no attorneys qualified as deceptive under FDCPA,
but fact that company's "legal department" was made up of non-attorneys did not render term
misleading per se).

[18]  The Court recently granted Defendant's motion for partial dismissal of Plaintiff's
claims, granting dismissal on Plaintiff's claim for state-wide injunctive relief, and on part of
Count III as well. The Court held that the allegations in Count III concerning UCB's contact of
Plaintiff's father and asking him to leave a message for Plaintiff were insufficient to assert a
claim under the UPA. Doc. 69 at 9.   As a result, Plaintiff's UPA claim is limited to allegations
of misrepresentation based on Mr. Vignoli's statement to Plaintiff's father as to whether he
worked at CitiBank or was calling for CitiBank.

the conduct complained of must have occurred in the regular course of the defendant's trade or commerce; and (4) the representation must have been of the type that "may, tends to or does, deceive or mislead any person."  NMSA 1978 § 57–12–2(D);  *Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101, 753 P.2d 346, 347 (N.M., 1988).

Defendant argues that Plaintiff's UPA claim fails because Plaintiff has offered no proof of actual economic damages.  Defendant also contends that Plaintiff requested only injunctive relief under the UPA claim, which the Court denied. *See* Doc. 69 at 12-13.   Plaintiff contends, correctly, that he is entitled to statutory damages under the UPA even where there are no actual damages.  The UPA allows a plaintiff to recover statutory damages, limited to one hundred dollars, "which may be trebled by the court when the party willfully has engaged in the unfair or deceptive practice."  *See Page & Wirtz v. Solomon*, 110 N.M. 206, 212 (1990); NMSA § 57-12-10(B).  Thus, Plaintiff's UPA claim does not wither on the issue of available damages.

### Conclusion

In sum, I find and conclude that Plaintiff is not entitled to summary judgment on his FDCPA claims in Count I because Defendant has submitted significant evidence which supports a bona fide error defense.  I further find and conclude that the act of leaving a message for the father for Plaintiff to call back UCB is not a "communication" under the FDCPA because it conveyed no information regarding Plaintiff's debt, directly or indirectly.  The remainder of the phone call provides no grounds for any FDCPA violation, since Mr. Vignoli's request about Plaintiff's employment is "location information" which is permissible as communication to third parties under the FDCPA.

I further find that Plaintiff is not entitled to summary judgment on his misrepresentation claim brought under § 1692e of the FDCPA (also in Count I) because I find that Defendant has

25

presented substantial evidence to strongly infer that, even if Mr. Vignoli told Plaintiff's father he was calling "from" CitiBank, such a statement is not a material misrepresentation under § 1692e.

Plaintiff's motion for summary judgment is also denied with regard to misrepresentation under the UPA in Count III.  Plaintiff's UPA claim does survive with regard to available remedies.  However, Defendant has nevertheless present sufficient evidence where a fact finder could find that UCB's alleged misrepresentations were not material.  Thus, the Court cannot find, as a matter of law, that UCB violated the UCB based on the evidence in the record.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (**Doc. 112**) is hereby DENIED for reasons described above, in that Plaintiff's motion for summary judgment on Counts I and III of the Complaint is denied.

_____

UNITED STATES DISTRICT JUDGE