## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————

MANUEL C. SEDILLOS

      Plaintiff,

vs.                                                      No.  10-CV-1063 WJ/WDS

UNITED COLLECTION BUREAU, INC.,

      Defendant.

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, filed November 21, 2011 **(Doc. 114)**.   Plaintiff alleges that Defendant United Collection Bureau, Inc. ("UCB") violated federal and state debt collection statutes when it contacted his father in connection with a debt owed by Plaintiff.   Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken and will be granted.

#### Background

Plaintiff obtained a line of credit with CitiBank, and eventually fell behind in his payments on the account.  CitiBank then placed the account with UCB to collect.  Plaintiff alleges that UCB wrongfully contacted his father in connection with its attempts to collect the debt.  The complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. in Count I; Tortious Debt Collection in Count II, and violations of the New Mexico Unfair Practices Act ("UPA"), NMSA 1978 §§ 57-12-1 et seq in Count III.  UCB denies Plaintiff's allegations, and contends that at all times it complied with applicable laws, rules and regulations in its attempts to collect the debt owed by Plaintiff to CitiBank.

In this motion, Defendant seeks summary judgment on all of Plaintiff's claims. Plaintiff filed a cross-motion for partial summary judgment, seeking judgment as a matter of law on all of his claims except for the tortious debt collection claim. The Court denied the motion. *See* Doc. 138.

The Court has addressed most of the salient legal issues in the previous Memorandum Opinion and Order that denied Plaintiff's motion for partial summary judgment, and will refer to the previous Order where appropriate rather than repeat its analysis and findings.

## I.    Undisputed Facts[1]

The facts presented in Defendant's motion for summary judgment mirror the facts presented in Plaintiff's cross-motion for summary judgment. The Court reiterates some of them here to provide a backdrop for the parties' arguments and the Court's discussion of the issues.

Plaintiff's full name is Manuel Carbajal Sedillos. Plaintiff's father's full name is Manuel Amador Sedillos. UCB representative Ruben Vignoli did not initiate the telephone call with Plaintiff's father that is the subject of this case. Instead, it was a "lady", believed to be UCB representative Patsy Quintana, that initially placed the call to Plaintiff's father's telephone number on July 22, 2010. The "lady" that called Plaintiff's Father asked for Manuel C. Sedillos.

Plaintiff's father was stuttering in response to Ms. Quintana. He did not believe that Ms. Quintana understood anything he was saying, probably because he was speaking a mix of English and Spanish. Plaintiff's father did not tell the "lady" that he was not Manuel C. Sedillos.

---

[1] The facts presented here are supported by the parties' references to the record. Unless otherwise noted, these facts are not disputed. Also, Plaintiff designates exhibits with numbers; Defendant designates exhibits with letters, thus eliminating the need to refer to exhibits according to party. For ease of reading, the Court will omit the majority of citations to the record, which are readily available from the parties' briefs.

Plaintiff disputes this fact, contending that UCB has admitted that the person on the phone identified himself as Plaintiff.  Ms. Quintana transferred the phone call to UCB representative Ruben Vignoli.  Mr. Vignoli introduced himself to Plaintiff's father and began by asking "what he was going to do about his $12,000 debt."  Plaintiff disputes this fact also, contending Mr. Vignoli asked the father what he was going to do "about *a* $12,000 debt."

Plaintiff's father then told Mr. Vignoli that he was Manuel A. Sedillos.  Mr. Vignoli asked if the father knew Manuel C. Sedillos.  At that point, Plaintiff's father told Mr.Vignoli that Manuel C. Sedillos was his son.   Defendant's position is that Mr. Vignoli thought he was initially speaking with the Plaintiff, instead of the father, up until the point when the father informed Mr. Vignoli that he was Manuel A. Sedillos.  Plaintiff differs with this contention, and argues that Mr. Vignoli knew he was speaking with Plaintiff's father when he first spoke with him.

At the time of the phone call at issue in this case, place its "CitiBank Collection Manual – United Collection Bureau" outlining its policies and procedures and a document called the "FDCPA Overview." Parties do not dispute that CitiBank authorized UCB to collect the debt that Plaintiff owed to CitiBank.

## II.    Legal Standard

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999).  When the parties to an action file cross motions for summary judgment, a court is entitled to assume that no evidence needs to be considered other

than that filed by the parties.  *Atlantic Richfield Co. v Farm Credit Bank of Wichita*, 226 F.3d

1138 (10th Cir. 2000).  Summary judgment is not appropriate if disputes remain as to material

facts.  *Id.*   In this case, the parties have stipulated to certain facts, *see* Court's Scheduling Order,

Doc. 27, which present a sufficient basis on which to grant summary judgment to one of the

parties.

### Discussion

Defendant's motion seeks summary judgment on all of Plaintiff's claims,

including tortious debt collection alleged in Count II.

### I.      FDCPA Claim

As part of his FDCPA claim, Plaintiff alleges that Defendant violated the FDCPA by

calling Plaintiff's father, disclosing information about Plaintiff's debt, and then asking the father

to deliver a message to Plaintiff.

The FDCPA prohibits debt collectors from communicating with third parties regarding

the debtor's debt without the consumer's consent:

> Except as provided in section 1692b of this title, without the prior consent of the
> consumer given directly to the debt collector, or the express permission of a court
> of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment
> judicial remedy, a debt collector may not communicate, in connection with the
> collection of any debt, with any person other than the consumer, his attorney, a
> consumer reporting agency if otherwise permitted by law, the creditor, the
> attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).  Other than having the debtor's consent, the FDCPA permits contact with

third parties for the "acquisition of location information":

> Any debt collector communicating with any person other than the consumer for the
> purpose of acquiring location information about the consumer shall--
>
> (1) identify himself, state that he is confirming or correcting location information
> concerning the consumer, and, only if expressly requested, identify his employer;

4

(2) not state that such consumer owes any debt; . . .

15 U.S.C. § 1692b.  "Location information" means a "consumer's place of abode and his

telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

A.      Disclosure of Debt

It is undisputed that Mr. Vignoli disclosed the existence and amount of Plaintiff's debt to

Plaintiff's father.  Defendant seeks the protection of a "bona fide error" defense, claiming that

Mr. Vignoli believed that he was speaking with Plaintiff, and not with Plaintiff's father, when he

made that statement.  The FDCPA provides for a bona fide error defense where a defendant

satisfies his burden of proving that the violation was (1) unintentional, (2) a bona fide error, and

(3) made despite the maintenance of procedures reasonably adapted to avoid the error.  *Johnson*

*v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006) (citation omitted).  While the "intent" prong of

the bona fide error defense is a subjective test, the bona fide and the procedures prongs are

objective tests.  *Id*. at 728-29.

Plaintiff argues that the "bona fide error" defense applies only to inadvertent clerical

errors, relying on *Smith v. Transworld Sys., Inc*., 953 F.2d 1025, 1032 (6th Cir.1992) and

*Akalwadi v. Risk Management Alternatives, Inc.,* 336 F.Supp.2d 492, 503 (D.Md.,2004).  In

*Akalwadi*, the debt collection agency erroneously reported to Equifax that the consumer had two

separate collection accounts.  In *Smith*, the debt collection agency was incorrect about the

amount of the debt.  While these cases support Plaintiff's contention, a recent United States

Supreme Court does not.  In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, the

Supreme Court held that the bona fide error defense does not cover errors of law or

"misinterpretations of the requirements of the Act itself."  559 U.S. _____, 130 S.Ct. 1605

(2010).  However, the court did not identify the "precise distinction between clerical and factual

errors, or what kinds of factual mistakes qualify" under the bona fide error defense.  *See id.*;

*Owen v. I.C. System,* Inc., 629 F.3d 1263, 1272 (11th Cir. 2011).  Nor does Tenth Circuit law

define the bona fide defense so narrowly.  *See, e.g., Riddle*, 443 F.3d at 727-28.  The analysis

under Tenth Circuit law appears to encompass errors such as the one which Defendant claims to

have occurred here, and other circuits have embraced a somewhat broader definition than the one

Plaintiff urges the Court to adopt here.  *See, e.g., Newman v. Ormond*, 396 Fed.Appx. 636, 2010

WL 3623174 (11th Cir. 2010) (debt collected protected by bona fide error defense under FDCPA

where collector scheduled deposition at unusual time or place, sending student document with

another consumer's name and case number, and misinforming her that hearing was cancelled).

Defendant's bona fide error defense in this case is not premised on a mistake of law, and

thus Defendant is not precluded from asserted this defense.   In the Memorandum Opinion and

Order denying Plaintiff's summary judgment motion, Doc. 138, the Court found that Defendant

sufficiently raised the bona fide error defense.  Because Plaintiff is the non-movant in the instant

motion, the question is whether Plaintiff has asserted a factual dispute to rebut the defense,

which would prevent the Court from granting Defendant's summary judgment motion on that

issue.

1.      *Whether act was intentional*

Plaintiff contends that Ms. Quintana knew she was calling a relative of Plaintiff and that

Mr. Vignoli's disclosure of the debt to Plaintiff's father was not intentional, pointing to the fact

that in discovery, UCB admitted that the person on the phone identified himself as Plaintiff's

father. Ex. 11.[2]  This does not create a factual dispute regarding whether Ms. Quintana knew she

---

[2]  Plaintiff's Exhibits 1-28 are attached to Plaintiff's motion for summary judgment and
the reply to that motion.  *See* Docs. 112 and 123.

was speaking to Plaintiff's father when she made the call.   Plaintiff's own evidence supports

Defendant's statement that the father identified himself only *after* Ms. Quintana gave the phone

over to Mr. Vignoli and Mr. Vignoli mentioned the debt:

> I received a phone call at 9:39 am on July 22, 2010.  The lady who called asked
> for Manuel C. Sedillos.  I guess I was studdering [sic], so she put a man on the
> line named Ruben.  He asked what I was going to do about a debt of $12,000 or
> so.  I told him my name was Manuel A. Sedillos.  I told him he was my son.  He asked me if I knew Manuel
> C. Sedillos.  I told him he was my son.  He asked me if he worked for the
> Department of Energy.  Then he told me he was from CitiBank, he gave me his
> phone number. . . Then he told me to tell my son to get in touch with him as soon
> as possible.

Exs. C and D.  Further, Plaintiff's father admits to being nervous when speaking with Ms.

Quintana, and was "probably" mixing Spanish with English, prior to Mr. Vignoli taking the

phone call from Ms. Quintana.  Ex. B at 22-24.  Thus, Plaintiff has not presented evidence to

rebut Defendant's statement of the facts.  The facts asserted by Plaintiff on this issue are

consistent with Mr. Vignoli's claim that he did not know that he was speaking with the father

when he asked him about a debt, but rather believed that he was speaking with Plaintiff.

Defendant's admission that the person on the phone identified himself as Plaintiff's father is

certainly correct, but the identification occurred *after* Mr. Vignoli took the phone call, based on

Plaintiff's own evidence.

   Plaintiff also argues that Defendant's Exhibit E should not be considered for purposes of

ruling on either party's summary judgment motion.  Exhibit E is an unsworn statement purported

to be an "interview form" written by Mr. Vignoli, who cannot be found, and who has not

provided testimony in this case.  In that form, Mr. Vignoli states that during the phone call at

issue in this case, the "[f]ather with same name identified himself as debtor. . . ."  and further,

that he was "decieved" [sic] by the father "trying to misrepresent by passing as son who has

same name." Ex. E.  The Court has already considered this piece of evidence in its previous

Memorandum Opinion and Order and agreed with Plaintiff that it was inadmissible hearsay.

Doc. 138 at 12.  The Court also found that the evidence was unnecessary in the Court's analysis

of the bona fide error defense because Defendant had presented other evidence sufficient to

preclude summary judgment for Plaintiff on the disclosure issue.

Thus, because Plaintiff has not shown any facts which infer that the disclosure of

Plaintiff's debt to someone other than the Plaintiff was intentional, Defendant has met its burden

on the first prong of the bona fide error defense.

*2.  Reasonableness of error*

Defendant also meets the requirements on the second prong, which inquires into the

reasonableness of the error.  It is undisputed that Ms. Quintana placed the call to Plaintiff's

father's telephone number.  It is also undisputed that Mr. Vignoli did not initiate the call, but was

passed the phone by Ms. Quintana after she made the call.  As previously mentioned, Plaintiff's

father stated that the "lady who called" asked for Manuel C. Sedillos.  Exs. C and D.  Plaintiff's

father stated that he was "studdering" in response to Ms. Quintana's inquiry.  Ms. Quintana

handed the phone to Mr. Vignoli when she had trouble understanding the father.  There is no

evidence that Ms. Quintana informed Mr. Vignoli that she had reached Plaintiff's father, instead

of Plaintiff.  Mr. Vignoli easily could have assumed that Ms. Quintana had reached the person

she had asked for, that is, the Plaintiff.  Any failure on Ms. Quintana's part to verify the identity

of who she was speaking with was reasonable, given the language difficulty between Ms.

Quintana and the person who answered the phone.  It was also reasonable to assume that Mr.

Vignoli took the phone call assuming it was Plaintiff on the line, and thus reasonable to believe

that Mr. Vignoli's disclosure about the debt was being made to the debtor.  Plaintiff's father did

not identify himself as someone other than Plaintiff until after Mr. Vignoli had introduced himself and disclosed information about the debt.

Further, the evidence shows that Mr. Vignoli spoke to the person on the phone as though he were the debtor.  Plaintiff contends that Mr. Vignoli did not believe he was speaking to Plaintiff because he asked Plaintiff's father what he was going to do about "a debt" or "the debt," as opposed to "*his* debt."  The Court had this to say about this argument:

> First, the Complaint alleges that the UCB representative asked the father what he was going to do about *his* debt —strongly suggesting that the collector believed he was speaking to the Plaintiff.  *See* Compl., ¶ 17 (emphasis added).  Second, use of the article "a" (as stated in the father's affidavit, Ex. 14) or "the," is not inconsistent with the assumption that the UCB representative was speaking with the debtor.

Doc. 138 at 11.

3.    *UCB Policies*

The last prong of the bona fide error defense is a showing that UCB's procedures were reasonably adapted to avoid the error that occurred, that is, the disclosure of debt to a third party. The Court addressed this third prong at length in its analysis for Plaintiff's motion for summary judgment, and sees no reason to reiterate those findings here.  However, the question here is whether Plaintiff has presented evidence sufficient to create an issue of fact regarding whether UCB had policies in place reasonably adapted to avoid the error.

Plaintiff's main argument here is that UCB's regular violations of the FDCPA shows that it cannot have maintained procedures reasonably adapted to avoid the violation, and the bona fide error defense must fail.  This argument references a number of unadjudicated complaints that have been filed against UCB with administrative agencies and courts alleging that UCB has illegally contacted third parties in violation of the FDCPA.   The Court also addressed this

argument previously:

> The Court agrees with Defendant that this evidence is improper and inadmissible. The filing of a complaint does not establish liability.  Also, there is no way to know whether the facts in any of these other cases align identically with the facts in this case.  Complaints filed against UCB involving other facts and parties are only tangentially related to the factual issues in this case, and a proper consideration of this evidence would force UCB to put on a defense for hundreds of lawsuits, even if the facts in those cases were factually identical to the instant case.   As a result, I find this evidence to be more prejudicial than probative.

Doc. 138 at 7.  Thus, evidence of unadjudicated lawsuits and administrative complaints are not sufficient to raise a genuine issue of fact on the third prong of the bona fide error defense.

Plaintiff also contends that UCB's failure to take any remedial action against either Mr. Vignoli or Ms Quintana demonstrates a lack of procedures adapted to avoid the errors that occurred.  This contention succeeds only if one assumes that the conduct of Mr. Vignoli and Ms. Quintana warranted discipline in the first place.  The UCB written policy strictly forbids disclosure of debt information to third parties.  Doc. 138 at 13-15.  Thus, it is not reasonable to expect this policy to forbid errors that are reasonable and unintentional, and there would be no reason to expect UCB to discipline either employee for this kind of conduct.  As a result, failure to take remedial action for Mr. Vignoli's or Ms. Quintana's conduct does not present a material factual dispute on the last prong of the bona fide error defense.

As a last effort to prevent Defendant from availing itself of the bona fide error defense, Plaintiff argues that Defendant cannot avail itself of the bona fide error defense if raising the defense would result in another violation of the FDCPA.  This other violation is allegedly Defendant's failure to give meaningful disclosure during the phone call to Plaintiff's father.  Plaintiff raised this same argument in its motion for summary judgment, and the Court rejected it there as well.

"Meaningful disclosure" is made when the individual debt collector who is employed by a debt collection company "accurately discloses the name of her employer and the nature of her business and conceals no more than [his] real name."" *See Fashakin v. Nextel Communications*, 2009 WL 790350, *7 (E.D.N.Y. 2009). However, the "meaningful disclosure" requirement only applies when the collector is speaking to the debtor. *Id.,* *8 (finding that the meaningful disclosure requirements only apply "when the telephone calls being placed are made directly to the consumer or some other party with whom the consumer has consented to allow the debt collector to communicate," and that debt collectors "may not make a meaningful disclosure of identity to this third-party without running afoul of the privacy-protective provisions of the FDCPA"); *see also Doshay v. Global Credit Collection Corp*., 796 F.Supp.2d 1301, 1304 (D.Colo. 2011).

Plaintiff contends that if Mr. Vignoli believed he was speaking directly with Plaintiff, he was obligated to make this disclosure. This is a "catch-22" argument, because if Plaintiff accepts Mr. Vignoli's belief that he was initially speaking with Plaintiff, then the debt disclosure would not violate the FDCPA. In fact, disclosure would be required, Defendant would not need the protection of a bona fide error defense—and Plaintiff could not make this argument. As it turns out, Plaintiff's argument fails even looking at the facts favorably to Plaintiff. The overwhelming evidence shows that Mr. Vignoli believed he was speaking with Plaintiff instead of his father only initially, until the father revealed that "Manuel C. Sedillos" was his son. At that point, Mr. Vignoli was certainly under no obligation to "meaningfully disclose" anything further about the debt to a third party, and in fact would have violated the FDCPA if he had done so.

A party can obtain judgment as a matter of law in its favor "only if the proof is all one

way or so overwhelmingly preponderant in favor of the movant as to permit no other rational

conclusion." *Gillogly vs. GE Capital Assurance* (10th Cir. 2005).  Defendant has satisfied its

burden of proving a bona fide error defense evidence that is overwhelmingly preponderant in its

favor, and Plaintiff has failed to present evidence which would infer otherwise or require that

this case proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52 (court must

make inquiry as to "whether the evidence presents a sufficient disagreement to require

submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter

of law").[3]

B.       Third Person Contact—Leaving Message with Plaintiff's Father

Plaintiff contends that UCB violated the FDCPA because leaving a message with a third

person does not come within communication allowed with third persons under 15 U.S.C. §

1692b.[4]  The Court has previously addressed this claim in depth.  Doc. 138 at 16-20.  I found that

in leaving a message for Plaintiff's father to have Plaintiff return the call to UCB, Defendant did

not convey any information regarding Plaintiff's debt, either directly or indirectly, and thus

leaving this message was not a "communication" for purposes of § 1692b.  The Court's

conclusion was based on legislative history of that section of the FDCPA as well as recent Tenth

Circuit precedent in *Marx v. General Revenue Corp.*, --- F.3d ----, 2011 WL 6396478, *2 (10th

Cir. 2011).

---

[3]  Defendant recently withdrew its jury demand, Doc. 136, and thus the Court is the fact finder in this case.

[4]  To the extent that Plaintiff argues that UCB's disclosure of Plaintiff's debt to his father was a violation of the FDCPA, the Court rejects that argument.  While the disclosure would certainly qualify as a "communication" under the FDCPA, the Court has already found that it was the result of an unintended, bona fide error.

The holding in *Marx* requires that a court must first look at the content and nature of the message before determining whether it qualifies as a "communication" for purposes of the FDCPA.   Plaintiff relies on cases which define "communication" more broadly than *Marx*, but these cases are not in this jurisdiction, and were decided prior to *Marx*.  Plaintiff states that "this Court" has previously rejected Defendant's argument in *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*   That case held that the collector's reference to "an important matter" and the "reference number 423635" was a "communication" under the FDCPA. 583 F. Supp. 2d 1278, 1281-82 (D.N.M. 2008).  However, *Anchondo* was decided prior to the Tenth Circuit's decision in *Marx*.  Further, the district court never made a final determination as to whether the voicemail message at issue in that case was a communication regarding a debt.  Thus, none of the cases cited by Plaintiff to argue that Mr. Vignoli's message was a "communication" prohibited under the FDCPA provides the Court with a sufficient reason to ignore Tenth Circuit precedent regarding how "communication" is defined.  Accordingly, I find that Defendant is entitled to summary judgment as a matter of law on this claim.

## II.    Violations of the FDCPA and UPA Based on Misrepresentation

Plaintiff contends that in falsely representing to Plaintiff's father that he was calling "from CitiBank," Mr. Vignoli violated both the FDCPA and the UPA.

### A.    Misrepresentation Under the FDCPA

The FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. Section 1692e(10) specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." The FDCPA "does not result in liability for every statement later alleged to be inaccurate, no

13

matter how small or ultimately harmless." *D'Avanzo v. Global Credit & Collection Corp.*, 2011 WL 2297697, 4 (D.Colo.) (D.Colo.,2011) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable.")

The Court has previously denied Plaintiff's motion for summary judgment on Plaintiff's FDCPA misrepresentation claim.  Doc. 138 at 23-24.  The Court noted that even though there was a factual dispute as to whether Mr. Vignoli said he was calling "for" CitiBank or "from" CitiBank, the dispute was immaterial.  There are no additional facts to be fleshed out from this claim—either statement was made or not made.  However, even if Mr. Vignoli stated that he was calling "from" CitiBank, Defendant would still be entitled to summary judgment as a matter of law.  Plaintiff presents no evidence that he or his father was misled or deceived in being told by Mr. Vignoli that he was calling "from" CitiBank."  Mr. Vignoli did not claim to be from a fictitious entity.  Further, Plaintiff does not dispute that CitiBank authorized UCB to collect the debt which Plaintiff owed to CitiBank; nor does he claim that Mr. Vignoli made any false statements about the existence or amount of the debt.  Plaintiff revisits his argument regarding the debt collector's disclosure of identity, which would be material had Mr. Vignoli been speaking with Plaintiff as the debtor.  However, Mr. Vignoli's assumption that he was speaking with Plaintiff was short-lived, lasting only until Plaintiff's father stated that Manuel C. Sedillos was his son.  As the Court noted in its previous Memorandum Opinion and Order, the result would have been different had Mr. Vignoli falsely held himself out as an attorney.   Doc. 138 at 23.

B.     Misrepresentation Under the UPA

The prove a violation of the UPA, a plaintiff must show that (1) the defendant made an "oral or written statement, visual description or other representation . . . that was either false or

misleading"; (2) the misrepresentation was "knowingly made in . . . the collection of debts"; (3) the conduct complained of must have occurred in the regular course of the defendant's trade or commerce; and (4) the representation must have been of the type that "may, tends to or does, deceive or mislead any person."  NMSA 1978 § 57–12–2(D);  *Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101, 753 P.2d 346, 347 (N.M., 1988).

In response to Plaintiff's motion for summary judgment, Defendant had argued that Plaintiff's UPA misrepresentation claim failed because Plaintiff offered no proof of actual economic damages.  However, the Court found this to be an erroneous argument to make, since a plaintiff is entitled to statutory damages under the UPA even where there are no actual damages. *See Page & Wirtz v. Solomon*, 110 N.M. 206, 212 (1990); NMSA § 57-12-10(B).

The same evidence that is relevant to Plaintiff's federal misrepresentation claim is also relevant to the state law claim of misrepresentation.  There is no evidence that Plaintiff or his father would have "acted differently had either of them knew Mr. Vignoli was calling from UCB instead of CitiBank.[5]  *See Salmeron v. Highlands Ford Sales, Inc.*, 271 F.Supp.2d 1314 (D.N.M. 2003) (in context of vehicle sale, misrepresentation or omission is "material" if plaintiff would have acted differently had he been aware of it or if it concerned the type of information upon which he or she would be expected to rely when making his decision to act).  It is undisputed that CitiBank authorized UCB to collect the debt, and there is no evidence to suggest that Plaintiff's father would have said anything different or offered different information during the phone call.  Thus, the Court finds that Defendant is entitled to summary judgment on this claim.

---

[5]  The Court makes the same assumption as it did with regard to Plaintiff's FDCPA misrepresentation claim.  In viewing the facts favorably to Plaintiff, the Court assumes that Mr. Vignoli told Plaintiff's father he was calling "from" Citibank.

### III.     Tortious Debt Collection

Count II of the Complaint alleges tortious debt collection.  Defendant seeks summary judgment on this claim on three grounds: (1) there is no evidence that Defendant intentionally used improper means to force an individual to pay a debt that he does not owe; (2) the only damages at issue are noneconomic damages; and (3) the only alleged action that could have upset the sensibilities of an ordinary person, that is Mr. Vignoli's alleged disclosure of the debt, was unintentional.

In *Montgomery Ward v. Larragoite*, the New Mexico Supreme Court held that "improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damages for an invasion of privacy." 81 N.M. 383, 385 (1970).  In the *Larrogoite* case, the creditor pursued Gilbert Larrogoite for his brother's debt.  The court held that the nondebtor brother was entitled to recover from store on his counterclaim for invasion of his privacy.  Tortious debt collection concerns collection activity knowingly aimed at the wrong person, thus invading that person's privacy.  *See Obenauf v. Frontier Financial Group, Inc.*, 785 F.Supp.2d 1188, 1224 (D.N.M., 2011).

Plaintiff contends that New Mexico's prohibition on public disclosure of private facts precludes summary judgment for Defendant on this claim.  Information on Plaintiff's private debt was disclosed to Plaintiff's father, and thus, Defendant is not entitled to summary judgment.  However, Plaintiff's conclusion does not consider all the elements of this claim.  Under what is referred to as the *Larrogoite* doctrine, a plaintiff must demonstrate a knowing and intentional disclosure of private information.  Plaintiff loses this claim under *Larrogoite* because he has not

16

alleged that UCB pursued his father for Plaintiff's debt.[6]  Also, there is no evidence that UCB's attempted to collect Plaintiff's debt from his father.

The parties also disagree on whether a plaintiff needs to show economic damages.  *Cmp. Larragoite* (awarding $7,500 for "mental anguish, embarrassment, humiliation and shame") with *Garbin v. Lenahan*, Civil No. 04cv409 JH/LFG (Doc. 16, Oct. 29, 2004) (unpublished opin.) (finding that plaintiff did not state claim for relief under tortious debt collection theory because the damages alleged were solely emotional).  The Court need not address which position is correct, since I find that there is no evidence that the elements of the claim have been met by Plaintiff.[7]

### Conclusion

In sum, I find and conclude that Defendant is entitled to summary judgment on the FDCPA claim in Count I concerning disclosure of Plaintiff's debt because Plaintiff has not presented evidence to rebut Defendant's bona fide error defense.  The Court also finds that Defendant is entitled to summary judgment in Count I concerning the message left by Mr. Vignoli to have Plaintiff call him back because that is not a "communication" under § 1692b of the FDCPA.

I further find and conclude that Defendant is entitled to summary judgment on Plaintiff's misrepresentation claims under both the FDCPA and the UPA (Counts I and III) on the basis that, even assuming Mr. Vignoli told Plaintiff's father he was calling "from" CitiBank, the

---

[6]  The Court makes this finding, fully aware that it is doubtful that Plaintiff could assert standing for what would be essentially his father's claim.

[7]  Plaintiff again brings up the numerous unadjudicated lawsuits and complaints to consumer agencies as evidence of UCB's wrongdoing in *this* case.  The Court adopts its previous findings with regard to the admissibility of such evidence.

17

misrepresentation was not material, and there is no evidence that Plaintiff or his father would have acted differently had either of them knew Mr. Vignoli was calling from UCB instead of CitiBank.

I further find and conclude that Plaintiff does not present any evidence that suggests that Defendant either pursued Plaintiff's father for Plaintiff's debt, or that Defendant attempted to collect Plaintiff's debt from his father.  Accordingly, Defendant is entitled to summary judgment on Count III as well.

It has been noted that the FDCPA is a strict liability statute in that "debt collectors are liable if they perform any intentional act that results in a violation, regardless of fault." *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006).  The Court also recognizes that the purpose behind the FDCPA is to prevent "abusive, deceptive, and unfair debt collection practices." *D'Avanzo v. Global Credit & Collection Corp*., 2011 WL 2297697, 5 (D.Colo., 2011).  At the same time, that goal is not served by transforming the strict liability standard "into a vehicle for 'gotcha' litigation."  *Id*.  This case is about a series of unintentional errors (obvious miscommunication between Ms. Quintana and Plaintiff's father; the transfer of the call to Mr. Vignoli, who assumed the person on the other end was Plaintiff) which may have caused Plaintiff's father some inconvenience, but which do not violate either federal or state debt collection laws.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 114)** is hereby GRANTED in that Defendant is entitled to summary judgment on all of Plaintiff's claims for reasons described above.

A Judgment shall be issued contemporaneously with this Opinion.

_____

UNITED STATES DISTRICT JUDGE